UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) | CASE NO. C-1-01-680 |
| | ) | |
| Plaintiff, | ) | JUDGE WEBER |
| | ) | MAGISTRATE JUDGE HOGAN |
| v. | ) | |
| | ) | |
| PRUDENTIAL INSURANCE COMPANY | ) | |
| OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**DEFENDANT PRUDENTIAL INSURANCE COMPANY OF AMERICA'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Eric Jeffries is afflicted with a little-known and poorly understood allergic reaction to hepatitis vaccine. Based on his medical condition, he sought and received disability benefits under his employer's disability plan. The case remains in suit because Plaintiff seeks a judicial declaration of permanent perpetual disability with corresponding payments under the Plan for Plaintiff's lifetime.

Unfortunately, this claim is without basis in fact or law. Neither the Plan terms nor ERISA support such an unusual claim nor does the administrative record on which Plaintiff relies. Indeed, if Plaintiff were to receive a declaratory judgment of permanent disability, he would receive a windfall at the expense of all the other insureds under the Plan who pay premiums and who expect the Plan to be administered according to its terms. Such a departure from the terms of the Plan would be entirely unfair to them. Moreover, no

evidence exists to support Plaintiff's broad claims about Prudential's failure to insist on periodic evidence of disability from its insureds. The simple fact is that Plaintiff must continue to be disabled under the terms of the Plan if he expects to continue to receive his monthly benefit of over $12,000.

**FACTS**

**I.    THE COURT NARROWED THE DISPUTE BETWEEN THE PARTIES.**

In January 2002, Prudential determined that Plaintiff was eligible for benefits under the terms of the Plan. (Affidavit of Aaron Vanderlaan in Support of Prudential's Motion for Partial Summary Judgment dated August 15, 2002, Ex. 2.) Since February 2002, Plaintiff has received over $12,000 in long-term disability benefits each month. (Plaintiff's Merits Brief at 20.) He will continue to receive these benefits as long as he remains disabled within the terms and conditions of the Plan.

On August 15, 2002, Prudential moved for partial summary judgment. Prudential argued that Plaintiff had received all the benefits to which he was entitled under the Plan and that he was not entitled to injunctive relief. Plaintiff opposes this motion by arguing, in part, that,

> It is believed, however, that after discovery is undertaken the record will establish that the defendant permits some disabled insureds to receive benefits under the terms of the plan without strictly requiring the insured to present written proof of loss within 90 days after the period for which benefits are sought.

(Pl. Mem. Opp. Def's. Mot. for Summ. J. at 3).

After considering the parties' arguments, on October 7, 2002, Magistrate Judge Hogan determined that the only controversy between the parties concerned the interpretation and application of the Plan's provisions relating to permanent disability benefits:

> Plaintiff seeks discovery which he believes will show that other participants are not subject to the verification requirements for continuing benefits, effectively granting some beneficiaries something akin to permanent future benefits. Plaintiff argues that requiring him to submit verification of continuing eligibility on a monthly basis while omitting this requirement for others amounts to an arbitrary and capricious application of the Plan in his case. Defendant argues that the Plan simply does not provide for the permanent disability benefits sought by plaintiff. (Doc. 23 at 7-9). The interpretation and application of the Plan are at the heart of plaintiff's request for declaratory relief. Without commenting on the merits of this particular claim, the Court finds that plaintiff has alleged sufficient facts to show an actual controversy in this matter conferring subject matter jurisdiction on the Court. Thus, to the extent that the plaintiff seeks a declaratory judgment under ERISA to clarify his rights to future benefits, an actual controversy exists in this matter and plaintiff may pursue that claim under Count I of the complaint.

(June 6, 2003 Order at 5).

Under Magistrate Judge Hogan's Report and Recommendation, the only remaining issues in this suit are whether the Plan requires Plaintiff to submit periodic evidence of his disability, and whether Prudential has required such verification from other Plan participants. Specifically, Magistrate Judge Hogan confirmed that Plaintiff may seek clarification of his "right to future benefits in accordance with 'the terms of the plan.'" (June 6, 2003 Order at 3 (quoting ERISA, 29 U.S.C. § 1132(a)(1)(B)).)

Because no record evidence supports Plaintiff's allegations, summary judgment in favor of Prudential is appropriate.

## II.   THE ADMINISTRATIVE RECORD IS LARGELY IRRELEVANT TO THE PRESENT MOTIONS.

Although Prudential disagrees with virtually all of Plaintiff's hyperbolic commentary on the administrative record, an extended discussion of the record is not fruitful because it is largely irrelevant to the present motions. Indeed, Prudential already granted Plaintiff long-

term disability benefits and Plaintiff's current arguments are narrow: whether injunctive relief, attorney's fees, and interest[1] are warranted.

**ARGUMENT**

**I.   PLAINTIFF IS NOT ENTITLED TO A DECLARATION THAT HE RECEIVE PERMANENT FUTURE BENEFITS THROUGH AGE 67.**

Neither the law nor the administrative record[2] supports the extraordinary relief Plaintiff seeks. Indeed, the Court must enforce the plain terms of the Plan, *see Great-West*

---

[1] Prudential does not contest interest at issue and will make suitable calculations and payment.

[2] The administrative record (upon which Prudential granted long-term disability benefits) does not aid the Court in determining whether injunctive relief is warranted. Plaintiff seeks an injunction based on the terms and conditions of the Plan and how they should be construed in the future. (In this regard, Plaintiff is simply wrong when he suggests that Prudential was somehow obligated to file the administrative record with the Court. *See* Fed. R. Civ. P. 5(d).) As set forth below, however, Plaintiff abdicated all claims that the Plan or ERISA law support his claim for permanent disability benefits—instead relying solely on the statements of a Prudential employee, which actually undermine his claim for relief. Because his claim for injunctive relief now rests solely on the deposition testimony of a Prudential employee, simple reference to the deposition transcript resolves the injunctive relief issue and the administrative record has no bearing.

Plaintiff's goal in reciting the administrative record as he does is to imply that Prudential should have granted long-term disability benefits before it did. The difficulty with Plaintiff's selective recitation of the record, however, is that he ignores the fact that he and his attorney routinely refused to cooperate with Prudential's reasonable requests for medical information. During the course of his final appeal, Plaintiff refused to provide full and complete information relating to his medical condition. (PRU 29, 30). Moreover, Plaintiff conveniently omits the fact that he and his attorney failed to comply with ERISA's requirement that he exhaust administrative remedies before commencing litigation. Perhaps Plaintiff resorts to such allegations because neither the facts nor the law support the requested relief and criticizing the manner in which Prudential handled the administrative claim will somehow convince the Court to ignore the law and import terms and conditions that are not part of the Plan. To the extent that allegations of delay and impatience help the Court in determining whether interest and fees are appropriate, however, Plaintiff and his attorney are guilty of both.

(continued on next page)

*Life & Annuity Ins. Co. v. Knudson*, 122 S.Ct. 708, 718 (2002) (primary purpose of ERISA is the enforcement of plan terms); *see also Buchman v. Board of Education*, 763 F. Supp. 1405, 1410-11 (N.D. Ohio 1991) (citing *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344 (8th Cir. 1980) (ERISA plans are valid, enforceable, bilateral contracts)); the Court may not rewrite the terms of the Plan. *E.g,. Buchman*, 763 F. Supp. at 1411 (claimants must satisfy obligations of plan and court cannot rewrite terms of plan) (citing *Monsanto Co. v. Ford*, 534 F. Supp. 51 (E.D. Mo. 1981)).

Plaintiff does not dispute that the Plan (1) requires him to provide periodic proof of disability; or (2) has no provision for no lump-sum or "permanent" future disability benefits. Thus, Plaintiff has no contractual basis for the strictly contractual remedy he seeks. Stripped of its hyperbole and irrelevant legal standards, Plaintiff's brief argues two points. First, he argues that the administrative record supports a finding of permanent disability. Second, he argues that, in some contexts, Prudential waives the contractual requirement that a claimant submit periodic proof of disability and that Plaintiff should be discharged from his contractual obligations. Both arguments are wrong.

---

(continued from previous page)

Perhaps the most troubling aspect of Plaintiff's criticism of the administrative process is that, even if certain events early in the process contained errors—a point Prudential contests—Congress enacted ERISA specifically to allow the administrative process to correct such errors rather than burdening the courts with them. *See Ravencraft v. Unum Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000) (citing *Makar v. Health Care Corp. of Mid-Atlantic*, 872 F.2d 80, 83 (4th Cir. 1989)); *Weinder v. Klais and Co.*, 108 F.3d 86, 90 (6th Cir. 1997). Thus, even if the Court were to conclude that certain events early in the claim process were less than optimal, any errors were ultimately corrected by Prudential when it granted long-term disability benefits in its final administrative appeal.

### A. Plaintiff is Not Permanently Disabled.

Mr. Jeffries was apparently disabled by a reaction to a Hepatitis vaccination. According to the record, this reaction is poorly understood, difficult to diagnose, and transient in effect. Plaintiff's affidavits -- apparently prepared by Plaintiff's counsel, given the identical repeated wording -- confirm the elusive nature of Mr. Jeffries' disease. *See* PRU 2277 ("... my inability to precisely diagnose Mr. Jeffries' condition ..."); PRU 2334 (same); PRU 2372 (same); ("... specific diagnostic tests have failed to yield a precise diagnosis or common names for his illness."))

The administrative record does not establish that Plaintiff is forever and incurably disabled. Indeed, the medical opinions expressed in the administrative record speak largely in present tense from which no future predictions could be made. For example, in affidavits submitted by counsel, the opinions of Plaintiff's primary physicians, Drs. McClellan, Luggan and Corwin are silent on the issue of future or permanent disability. (PRU 2277, PRU 2334, PRU 2372). (Note that the affidavits are either undated or date back to 1999.) Even the strongest of Plaintiff's opinions do not establish permanent disability. In 2000, Dr. Hyde discussed Plaintiff's disability in terms of the "foreseeable" future, but noted that "it is impossible for me to come to additional conclusions until he has got through the next year of treatment and investigation." (PRU 2291. Also in 2000, Dr. Poser offers only a "guarded diagnosis" and indicates that Plaintiff's "prospects for recovery and return to gainful employment [are] quite dismal." (*See* Plaintiff's Sept. 9, 2002 Mem. Opposing Def.'s Mot. for Summary J. at 4.)

These statements (and others in the record) do not conclusively establish that Plaintiff is forever disabled. They establish that Mr. Jeffries is disabled, but they do not address his

prospective potential for sickness or health. Quite simply, the administrative record does not support the permanent relief Plaintiff seeks. To the contrary, the vast bulk of the record establishes the difficulty of diagnosis and discuss Plaintiff's disability in the present tense, at the time of the affiant's last examination. (*See, e.g.,* PRU 106, 109, 120, 127). No one definitively states that he is permanently disabled without hope of recover. (Id.) Indeed, the obscure and mysterious nature of Plaintiff's ailment argues that advances in detection, therapy, treatment and workplace accommodation may well offer hope for recovery, an outcome that no one would oppose. (PRU 152-193).

Moreover, if the Court were to exempt Plaintiff from his contractual obligations and he were to recover from his disability, the Court would have conferred on Plaintiff an improper windfall of hundreds of thousands of dollars. This windfall would come at the expense of thousands of other insureds who expect the Plan to be administered consistent with its terms. The Court should enforce the clear terms of the Plan and, because there is no basis for declaratory relief, the Court should grant summary judgment in favor of Prudential and dismiss the action with prejudice.

      **B.**    **Prudential Does Not Waive Its Contractual Requirements.**

Plaintiff also failed to make good on his prediction to the Court that he could establish through discovery that Prudential routinely waives its contractual requirements and Plaintiff is entitled to such waiver. Plaintiff boldly represented to the Court that discovery would "likely show that [Prudential] has administered the Plan in such a way that some disabled insured, e.g., those with permanent injuries, receive long-term disability benefits under the Plan 'without strictly requiring the insured to present written proof of loss within 90 days after the period for which benefits are sought' in order to receive those benefits.'" (June 6,

2003 Order at 3.) On the basis of this prediction, the Court allowed discovery to proceed, but Plaintiff's discovery shows nothing of the kind.

Plaintiff conducted several depositions, but only pursued the waiver issue with one witness, Dan Dougherty, a director at Prudential. Far from establishing a waiver, the excerpt from Mr. Dougherty's testimony cited by Plaintiff actually establishes the contrary point. (Pl.'s Br. at 26 (even if "it's clear and evident that there's not a likelihood, but that the person is totally disabled, at present, and there is no likelihood of future improvement, ***then [Prudential] would require periodic proof of disability***").)

Nothing in this testimony suggests a waiver of contract terms by Plaintiff. It is incredible that Plaintiff can cite this language and somehow urge the Court to conclude that Prudential grants permanent disability benefits. No evidence suggests that Prudential waives the proof-of-disability requirement or intends to apply a different standard to Plaintiff than that applied to other claimants. Indeed the evidence is to the contrary; Plaintiff selectively quotes the deposition and omits the evidence that Prudential consistently requires its most profoundly disabled recipients to demonstrate periodic proof of disability. Mr. Dougherty testified that Prudential requires continued proof of disability:

> Q. Are there claims that would you require proof of disability?
>
> A. I can't recall that we have any such situation. But, at a minimum, we would require proof of disability, at least once every two years.
>
> Q. Are there any claims you have on which it's a once every two years scenario?
>
> A. Yes.
>
> Q. Are there any claims you have where it's a longer period of time than that?

>   A.   No.

(Affidavit of James R.Cummins, Ex. A. (Deposition of Dan Dougherty at 47-49)). Mr. Dougherty testified that only in very few cases does Prudential allow periodic evidence to be submitted as infrequently as every two years; most require more frequent submissions:

>   Q.   What types of illnesses do those individuals have that you can think of?
>
>   A.   I can't think of any illnesses offhand. You know, and maybe what you're getting at is, we do require periodic proof of disability. If somebody has a condition. Is that extremely well documented by medical, by objective medical evidence, such as the situation of somebody in a coma, or somebody who's lost limbs, and it's clear and evident that there's not a likelihood, but that the person is totally disabled, at present, and there is no likelihood of future improvement, then we would require periodic proof of disability, but we would only request it every couple of years.
>        <u>But there are many conditions where present total disability isn't clear or the opportunity for future recovery is based on improvement in the condition or advances in medical technology, where we would require more frequent proof of disability</u>.
>
>   Q.   Even where the person, the hypothetical person has been receiving benefits continuously for five years or more?
>
>   A.   Yes.

(*Id*. at 50-51) (emphasis added).

This requirement is not intended to vex and annoy benefit recipients. Rather, it assures that recipients are treated consistently, that they are alive, and that social security status is unchanged, and that their disability persists. Plaintiff's claims are utterly unfounded, and they reveal Plaintiff's strategy for what it is: a hyperbolic attack, designed to browbeat Defendant and to elicit judicial sympathy. Such baseless allegations have no place under the rule of law.

Simply put, there is no record evidence suggesting that Prudential ever waived the requirements of a claimant to confirm periodically that he or she continues to satisfy the

standards of disability set forth by the contract.  Without such evidence, Plaintiff cannot withstand summary judgment.  (*See* June 6, 2003 Order at 4 ("[P]laintiff's claim for clarification of his right to future ERISA benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) must be decided based solely on the evidentiary materials contained in the administrative record and any evidence presented in connection with a procedural challenge to the administrator's decision.").)

## II.  PLAINTIFF'S REQUESTED ALTERNATIVE DECLARATION IS UNSUPPORTED BY THE LAW.

If the Court correctly concludes that it should not declare Plaintiff forever and incurably disabled, Plaintiff seeks an alternative declaration, which is intended to accomplish the same result.  Because he cannot establish a contractual or legal basis for his extraordinary relief, Plaintiff attempts to manufacture one by suggesting that the Court review Prudential's decision under a *de novo* standard. (Pl.'s Br. at 24-25.)  The *de novo* standard has no application under the circumstances of this case, however.  As the Sixth Circuit has noted:

> In *Bruch* the court rejected use of the arbitrary and capricious standard in ERISA cases and held that a ***denial of benefits*** challenged under 29 U.S.C. § 1132(a)(1)(B) must be reviewed under a *de novo* standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority ***to determine eligibility for benefits or to construe the plan's terms***. 109 S.Ct. at 956.

*Perry v. Simplicity Eng'g*, 90 F.3d 963, 965 (6th Cir. 1990).  (Emphasis Added).

Here, the Court is not being asked to review a denial of benefits—indeed, full benefits have been granted.  Nor is the Court being asked to construe the Plan's terms.  Instead, Plaintiff argues that, notwithstanding the plain terms that requires periodic proof of disability, Prudential's alleged ***conduct*** regarding other claimants negates the plain contractual requirement that he provide periodic proof of disability.  As established above,

nothing about Prudential's conduct suggests a waiver. Therefore, Defendant's alleged conduct is irrelevant concerning what, if any, deference the Court would accord Prudential's determination of benefits or interpretation of plan terms. It is also unnecessary for the Court to issue what is tantamount to an advisory opinion because there is no present dispute between the parties regarding the types of ailments that constitute a disability under the Plan. Indeed, Plaintiff has satisfied the definition of disability.

### III.    NO ATTORNEYS' FEES ARE WARRANTED.

Plaintiff correctly concedes that the Sixth Circuit has held that no attorneys' fees can be recovered when those fees were incurred before commencing the present action. (Pl.'s Br. at 20 n.11; *see also Anderson v. Proctor & Gamble Co.*, 220 F.3d 449, 456 (6th Cir. 2000) (holding that attorneys' fees prior to commencing action are not recoverable under ERISA).) **[Confirm]**  Accordingly, Plaintiff may only pursue post-filing attorney's fees and may recover them only if he can establish that circumstances warrant this remedy. *E.g., Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002) (five-factor test for awarding fees and costs). He fails to do so.

#### A.    Prudential Has Exhibited No Bad Faith.

Plaintiff has not establshed that Prudential exhibited bad faith. Plaintiff received all relief to which he is entitled and nothing discovered in the last year and a half of litigation provides any basis for further relief under ERISA—much less attorney's fees. Plaintiff does not suggest that Prudential's claim process violates ERISA in any way. Nor does Plaintiff claim that ERISA provides recovery for alleged errors occurring early in the claim process, where the final administrative appeal results in a grant of benefits. Indeed, the cases cited by Plaintiff supporting an award of attorney's fees and a finding of bad faith are limited to

situations where benefits were denied. This is not a case in which Plaintiff asks the Court to review a decision to deny benefits or otherwise unfavorable interpretation of Plan terms; to the contrary, Prudential granted and continues to pay long-term disability benefits. As a result, there is no basis for bad faith.

### B. Prudential Could Pay Fees.

Prudential concedes that it can pay Plaintiff's fees if awarded.

### C. Award of Fees Would Serve No Valid Deterrent Effect.

Prudential's final resolution of the claim was in Plaintiff's favor. Even if the Court credits certain aspects of Plaintiff's allegations regarding the early portion of the claim process, Plaintiff's illness is complicated and mysterious. Also, any delay or difficulty had contribution from Plaintiff. Under these circumstances where Plaintiff has received and continues to receive long-term disability benefits, an award of attorney's fees would serve no valid deterrent effect.

### D. There Is No Common Benefit.

The benefit of an award of attorney's fees is personal to Plaintiff, a point he concedes. (Pl.'s Br. at 23.) Moreover, the unique and difficult nature of Plaintiff's illness defies the conclusion that those any benefit in allowing attorney's fees could be common.

### E. Relative Merits Do Not Support Attorney's Fees.

The merits of this case favor Prudential. There is no factual or legal basis for a judicial declaration that a claimant is forever and incurably disabled. Because the underlying claim has no merit, the Court should not award attorney's fees.

**CONCLUSION**

The Court has correctly recognized that the only basis for Plaintiff's claim of permanent disability must be either the Plan or ERISA. Unfortunately for Plaintiff, neither supports his claim, nor does the administrative record. Because of the utter absence of legal support for Plaintiff's claim, summary judgment for Defendant is proper.

Respectfully submitted,

Dated: September 3, 2003

/s/ James R. Cummins
James R. Cummins (0000861)
Trial Attorney for Defendant
WAITE, SCHNEIDER, BAYLESS &
CHESLEY CO., L.P.A.
1 West Fourth Street
1513 Fourth & Vine Tower
Cincinnati, OH  45202
Telephone: 513/621-0267

Dated: September 3, 2003

/s/ Edward T. Wahl with permission by
    James R. Cummins
Edward T. Wahl (Minnesota Bar No. 15409X)
Michael F. Cockson (Minnesota Bar No.
   280549)
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Telephone: 612/766-7000

CERTIFICATE OF SERVICE

      A copy of the foregoing Defendant Prudential Insurance Company of America's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment was filed electronically this 3rd day of September, 2003. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. As a courtesy to counsel, service was also accomplished by mailing a copy, via U.S. Mail, to Michael A. Roberts, Graydon Head & Ritchey LLP, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45201, this 3rd day of September, 2003.

    /s/ James R. Cummins
    James R. Cummins (0000861)
    Trial Attorney for Defendant
    WAITE, SCHNEIDER, BAYLESS &
    CHESLEY CO., L.P.A.
    1 West Fourth Street
    1513 Fourth & Vine Tower
    Cincinnati, OH 45202
    Telephone: 513/621-0267

M2:20565721.03
24508