44

e have

ctor,
ulting work

or
ne, was
le?

ne first

all

as a
o
memos
anager

ctly to

45

th

;
es?

te to

u
or

I

46

A. Actually, it's Carrie Strohl.
Q. Carrie Strohl. And, again, she, apparently, made the recommendation, although there's not a record of it, and you authorized it.
MR. WAHL: Is there a question?
MR. ROBERTS: That was the question.
A. Actually, in that case, it appears that I actually documented the SOAP note.
Q. So, you're the one that, ultimately, made the decision in the third appeal stage?
A. Yes.
Q. And then, in the third appeal stage, you and Brian Fuller made the decision to get, to deny the appeal?
A. The third appeal wasn't a denial.
Q. Right. It was approved, and it was approved on the same medical information on which you denied the second appeal. Right?
A. There's a couple things I want to clarify.
First of all, on the third appeal, Brian Fuller and I didn't make a decision one

47

way or another. That decision was made by our appeals committee.
Q. Which consisted, at the time, of Marcia Murray, who was involved early in the case --
MR. WAHL: Objection to.
Q. -- Jen Nichols, who was involved in denying the first appeal?
A. And Tara Warshawer.
Q. What's Tara Warshawer's position at that time?
MR. WAHL: At which time?
MR. ROBERTS: The time of December 27, 2001 when this decision was made to approve the third appeal.
A. I believe she was a team manager.
Q. Are there claims that Prudential has approved that are on auto pay?
A. I'm not sure what you mean.
Q. You've never heard the phrase auto pay?
A. I've heard the phrase auto pay, never in connection with a long-term disability claim.
Q. Oh, really. Are there claims that

48

have been approved and they're not subject to further review, they just get their disability check every month?
A. No.
Q. That doesn't exist?
A. No.
Q. So, if a guy's in a coma and has been there for seven years, he's got to prove he's disabled every month. Is that the case?
MR. WAHL: Objection.
A. In order to receive long-term disability benefits, there are the requirements to prove to disability.
Q. So, in a situation where you have somebody in a coma, has been in a coma for ‹ years, has no likelihood of coming out of the coma, do you have them examined every mon have the attending physician's statement sent to the company every month?
A. We require periodic proof of disability. If you want a specific answer, no, we don't require an attending physician's statement every month, but we, certainly, do require periodic proof of disability.
Q. How periodic, in that situation,

49

would you require proof of disability?
A. I can't recall that we have any such situation. But, at a minimum, we would require proof of disability, at least once every two years.
Q. Are there any claims you have on which it's a once every two years scenario?
A. Yes.
Q. Are there any claims you have where it's a longer period of time than that?
A. No.
Q. Are there claims that you approved for a period of five years or more where you require monthly proof of disability?
MR. WAHL: Objection.
A. I'm not sure I understand your question.
Q. Are there claims where the claimant has been receiving benefits for a period equal to or greater than five years, where you still require monthly proof of disability?
A. There could be.
Q. Are there any that you can think of?
A. Yes.