IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) | Case No. C-1-01-680 |
| | : | |
| Plaintiff, | ) | Judge Weber |
| | : | Magistrate Judge Hogan |
| vs. | ) | |
| | : | |
| PRUDENTIAL INSURANCE CO., | ) | PLAINTIFF'S REPLY MEMORANDUM |
| | : | IN SUPPORT OF PLAINTIFF'S |
| Defendant. | ) | <u>MERITS BRIEF AND JUDGMENT</u> |

On the basis of the Administrative Record ("AR") and the analysis set forth herein and in Eric L. Jeffries' Merits Brief, plaintiff is entitled to:

1. A declaration of this Court that plaintiff is entitled to long term disability benefits under the disability insurance policy issued by defendant (the "Policy") until plaintiff's 67th birthday; and

2. An award of his attorney fees, expenses, and interest since June 1, 1999.

I. *<u>The Declaratory Relief</u>*.

ERISA relief can be "administered through a declaratory judgment of entitlement to benefits or any injunction against a plan administrator's improper refusal to pay benefits." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987). Here, declaratory relief is appropriate.

    A. *<u>The First Declaration – Plaintiff Has Been "Totally Disabled" For Five (5) Years.</u>*

Three months after defendant forced Mr. Jeffries to proceed with this action, the defendant determined that Mr. Jeffries is "totally disabled" within the meaning of the Policy. And since that time, defendant has without reservation paid monthly benefits to Mr. Jeffries - confirming that Mr.

Jeffries presently satisfies and has satisfied for the entire period of September 1998 to September 30, 2003, the Policy's definition of "Totally Disabled."

However, because there is some equivocation on defendant's part, a controversy exists concerning these paid benefits and a declaration concluding the issue of Mr. Jeffries' entitlement to these benefits is appropriate. Specifically, as the Court found when it denied defendant's earlier request for partial summary judgment, when read together, defendant's December 27, 2001, decision awarding benefits to Mr. Jeffries[1] and defendant's January 4, 2002, letter notifying Mr. Jeffries of defendant's decision suggest that Mr. Jeffries:

> "has made a sufficient showing of threatened injury attributable to defendant <u>which is likely to be remedied by a declaratory judgment</u> . . . it has taken [Mr. Jeffries] nearly three years to obtain a decision from defendant granting him long-term disability benefits despite substantial evidence showing that [Mr. Jeffries] is disabled. The grant of benefits came only after plaintiff filed the lawsuit in the instant case. [And] it <u>appears the decision allowing disability was equivocal and subject to the submission of further evidence substantiating disability</u>. Defendant has also indicated that the further documentation verifying continuing disability will be requested shortly. In view of the history of [Mr. Jeffries'] claim and appeals, this information suggests that plaintiff's entitlement to continuing benefits is at imminent risk of termination." (*Doc. 29*)(*emphasis added*).

---

[1] Between October 3, 2001, when Mr. Jeffries filed this suit, and December 27, 2001, defendant performed no activity on Mr. Jeffries' Claim. In fact, as evidenced by defendant's "SOAP Note" immediately prior to defendant's December 27, 2001, SOAP note (which is dated September 25, 2001), defendant affirmatively "closed" Mr. Jeffries' Claim at that time. (*AR 00389- 00410*). That September 25, 2001, "SOAP Note" states that Mr. Jeffries' Claim will remain "terminated until additional requested documentation is received." *Id*. Defendant never communicated this "termination" to Mr. Jeffries and never received any "additional documentation." Despite the inactivity and the "close" of Mr. Jeffries' Claim file and despite no further documentation being received by defendant, on December 27, 2001, 2 weeks before the depositions of defendant's representatives were agreed to commence, representatives of the defendant <u>purportedly</u> met to discuss action on Mr. Jeffries' Claim and approved it.

2

Accordingly, as a preliminary matter, Mr. Jeffries is entitled to a declaration of this Court that he is and has consistently been "totally disabled" within the meaning of the Policy for the entire period September 1998 to October 2003 and is entitled to retain the benefits he has received to date.

B.     Second Declaration – "T*otally Disabled" And Entitled To Benefits To Age 67.*

The same medical evidence which establishes that Mr. Jeffries has been consistently disabled for over 5 years, establishes that Mr. Jeffries is permanently disabled and need not further shoulder the burden of dealing with defendant. This is so since it is undisputed that the defendant has administered the Policy in such a way that some disabled insureds receive long term disability benefits without proof of loss every month (*See, Dougherty Depo., Volume II, pp. 49-53, Exhibit 1*). But Mr. Jeffries' Claim was given no such consideration. And there can be no dispute that defendant pays lump sum settlements to disabled individuals to conclude ongoing commitments.

Daniel Dougherty, decisionmaker at each stage of Mr. Jeffries' claim and appeal process, testified:

> Q:     "Are there claims where the claimant has been receiving benefits for a period equal to or greater than five years, where you still require monthly proof of disability?
>
> A:     [Mr. Dougherty] There could be . . . if . . . there is no likelihood of future improvement, then we would require periodic proof of disability, but we would only request it every couple of years."
> (*Id., pp. 49-50, emphasis added*).

And in Mr. Jeffries' case no consideration was given to the fact that he had been disabled for years and his doctors' unrebutted reports established that his illness was permanent:

> Q: "So, no consideration was given to the fact that his doctors suggested it would be permanent. Is that correct?
>
> A: It wasn't relevant to the determination." (*Id., p. 53*).

On the basis of Mr. Dougherty's testimony, it is clear that Mr. Jeffries can be entitled to benefits without continuing interaction with the defendant. Such benefits are provided to others who paid premiums for the Policy, but no consideration for this benefit was given to Mr. Jeffries. And the Administrative Record on this point indisputably shows permanent disability. It includes, *inter alia*, the testimony of:

- Mr. Jeffries' three primary physicians, Drs. Michael McClellan, Michael Luggen, and Corwin Dunn, authored sworn statements stating that Mr. Jeffries' illness disables him from continuing in his Occupation. (*Dunn: AR 02277- 02282; Luggen: AR 02334 – 02348; and McClellan: AR 02372 - 02382*);

- Dr. Byron Hyde found that Mr. Jeffries "is disabled for the foreseeable future" (*AR 02328*) and has "suffer[ed] a downward spiral of his health which led to his permanent departure from work in September 1998." *Id*;

- Dr. Charles Poser of the Harvard Medical School gives Mr. Jeffries a "guarded" diagnosis with the "prospects for recovery and return to gainful employment [as] quite dismal. *(AR 02399))*;

- Dr. Sheila Bastien, a neuropsychologist determined that "Mr. Jeffries could not work in any job in the national economy for which he has reasonable training and experience and certainly could not work in his previous occupation as a result of his complex medical problems, abnormal brain scans, and neurocognitive evaluation." *(AR 02266)*; and

- Ms. Kathy Baris, an occupational specialist, determined that Mr. Jeffries is "unable to perform the main duties of his Occupation" and his ability to return to his Occupation "would require significant recovery from his current (illness)."

In fact, the only "independent" medical exam obtained by defendant (in January 2000 – during the first Appeal Stage) confirmed that Mr. Jeffries suffers from acquired autoimmunity. There simply is no evidence to suggest that Mr. Jeffries is not permanently disabled.

All of this evidence supports one conclusion: <u>Mr. Jeffries is "Totally Disabled."</u>  Defendant has <u>no evidence</u> to dispute or counter these significant and numerous treatment-based opinions, and no reasonable person could conclude on the basis of all the medical evidence that Mr. Jeffries' illness fails to make him totally disabled within the meaning of the Policy.

Accordingly, Mr. Jeffries is entitled to a declaration that the Administrative Record establishes that Mr. Jeffries is permanently disabled and entitled to benefits under the Policy through age 67.

### C. *Alternative Declarations: Standard Of Review, Objective Evidence*

Should this Court not declare that Mr. Jeffries is entitled to benefits under the Policy to age 67, Mr. Jeffries is entitled to alternative declarations to clarify existing disputes. Specifically, as detailed in the Merits Brief, (i) the Policy does not provide discretion to defendant;[2] (ii) neither the Policy nor ERISA require that there be "objective medical evidence;"[3] and (iii) a condition that waxes and wanes could qualify as totally disabling.

---

[2] This circuit has "consistently applied a *de novo* standard of review unless the administrator establishes that the plan contains a <u>clear</u> grant of discretion." ***Wulf v. Quantum Chem. Corp.***, 26 F.3d 1368, 1373 (6th Cir. 1994)(*emphasis added*).

[3] Despite Prudential's numerous "Exceptions" and qualifications to coverage, which are set forth at pages 10-14 of the Policy and in the Claim Rules (pages 21 and 22 of the Policy), the Policy does not require the existence of "objective medical evidence" and the asserted lack of "objective medical evidence" <u>cannot</u> be a proper basis for denial of the Claim.

II.    *Monetary Relief: Attorney Fees, Expenses, and Interest.*

Mr. Jeffries' Claim and three appeals consumed 2 years 8 months and cost Mr. Jeffries a tremendous sum in attorney fees. At no point during that process did: (i) any of defendant's in-house, out-house, or "independent" physicians personally examine Mr. Jeffries; (ii) anyone representing the defendant ever speak to one of Mr. Jeffries' physicians; and (iii) *amazingly*, it appears from the phone logs and SOAP notes for June 2000 to October 2001, that defendant made no effort whatsoever to perform any assessment of the materials Mr. Jeffries submitted for his 2nd and 3rd Appeals. (*See*, AR 00406-00410 and AR 00022–00025). Defendant did not even apply the correct standard for "totally disabled" when determining Mr. Jeffries' Claim and Appeals. (*Compare AR 00090 with AR 00074*).

Pursuant to ERISA's fee-shifting provision, Mr. Jeffries seeks and is entitled to an award compensating him for the attorney fees and expenses he incurred: (i) during the administrative review phase of the case, which as a practical matter is the stage of the dispute where all substantive actions took place; and (ii) since the time Mr. Jeffries filed a Complaint with this Court.

Mr. Jeffries also seeks (pursuant to 28 U.S.C. §1961) and is entitled to an award of prejudgment interest on: (i) the $419,543.67 in benefit payments he received February 6, 2002, but which were properly payable during the period June 1, 1999, to January 31, 2002; and (ii) prejudgment interest on the attorney fees he has incurred since June 1, 1999. Finally, Mr. Jeffries seeks and is entitled to an award of post-judgment interest. 28 U.S.C. §1961.

A.  **Attorney Fees and Expenses.**

Section 502 of ERISA, 29 U.S.C. § 1132, provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). This language has been interpreted by the Sixth Circuit as granting "substantial discretion" to the district court to grant or deny a request for attorney fees in an ERISA action.[4] However, since neither the wording of the statute nor the legislative history provide guidance as to how to determine whether to shift a fee in ERISA cases,[5] a majority of courts have utilized the five-factor analysis first developed in *Eaves v. Penn*, 587 F. 2d 453 (10th Cir. 1978), and adopted by the Sixth Circuit in *Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). These are known as the "**King** Factors:"

1)   the degree of the opposing party's culpability or bad faith;
2)   the opposing party's ability to satisfy an award of attorney fees;
3)   the deterrent effect of an award on other persons under similar circumstances;
4)   whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and
5)   the relative merits of the parties' positions.

---

[4]   *Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 860 (6th Cir. 2000); and *Schwartz v. Gregori M.D.*, 160 F.3d 1116, 1119 (6th Cir. 1998).

[5]   The only indications of Congress's intent in allowing fees pursuant to the ERISA statute are to "provide . . . participants and beneficiaries with broad remedies for preventing violations . . . ." S. Rep. No. 127, 93d Cong., 1st Sess. 35 (1973), 1974 U.S. Code Cong. & Admin. News 4639, 4871; and "to remove jurisdictional and procedural obstacles which in the past . . . have hampered . . . recovery of benefits due to participants" H.R. Rep. No. 533, 93rd Cong., 1st Sess. 17 (1973), 1974 U.S. Code Cong. & Admin. News 4639, 4655.

Importantly, while the **King** Factors are a useful tool in analyzing fee requests, they are used flexibly and no single factor is necessary or dispositive.[6] In fact, one **King** Factor standing alone may provide sufficient support for an award of fees to counsel.[7]

1. *Administrative Review Stage Of The Case.*

Notwithstanding defendant's argument,[8] there is no *per se* rule prohibiting this Court from exercising its "substantial discretion" under the facts of this case to award Mr. Jeffries his legal fees incurred since June 1, 1999, the date that defendant first denied the Claim.

The fact that the attorney fees Mr. Jeffries incurred during the administrative review stage of the case were incurred prior to the date a complaint was filed in this Court does not diminish their importance to the ultimate outcome.[9] The policy considerations influencing these two Supreme Court decisions, apply in equal measure in this action. That is, when assessing the propriety of shifting the burden and expense of attorney fees, courts should consider the legitimate, relevant purposes for which fee-shifting has been permitted or proposed, including punishing bad faith litigants, providing the plaintiff with complete relief

---

[6] *Firestone Tire & Rubber Co. v. Neusser*, 810 F. 2d 550, 558 (6th Cir. 1987); and *Hoover v. Provident Life & Accident Insurance Company*, 290 F. 3d 801 (6th Cir. 2002).

[7] <u>See</u>, *Administrative Committee Of The Sea Ray Employees' Stock Ownership And Profit Sharing Plan v. Robinson* 2000 U.S. Dist. LEXIS 22036 (E.D. Tn. 2000). (Exhibit 1)

[8] Defendant relies on *Anderson v. Procter & Gamble Co.*, 220 F.3d 449 (6th Cir. 2000) to argue that notwithstanding its conduct, Mr. Jeffries cannot recover attorney fees and expenses incurred in the administrative review stage of this case. *Anderson*, however, is easily distinguished: as the *Andersen* Court highlighted in its decision, the plaintiff in that case "did not file a civil action for any of the reasons set forth in § 1132(a), but filed suit only to recover attorney fees for legal work performed during her administrative claims proceeding."

in appropriate cases, preventing unjust enrichment, or removing deterrents to meritorious litigation by reducing the disparity between the resources available to the parties.

In *Pennsylvania*, the Supreme Court determined that "participation in the administrative review process was crucial to the vindication of respondent's rights . . . and compensation for these activities was entirely proper and within the 'zone of discretion' afforded the District Court." (*Id. at 561*). And the Supreme Court further determined that fees incurred in the administrative review process may be properly shifted if they are "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." (*Id. at 561*).

In *Sullivan*, the Court cited *Pennsylvania* for the proposition that fees incurred for an administrative review are recoverable where they are "intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees . . . [and] they should be considered part and parcel of the action for which fees may be awarded." (*Id. at 888*).

In *Anderson* (the case defendant relies upon), the Sixth Circuit interpreted the Supreme Court's statement in *Sullivan* (that "administrative proceedings may be so intimately connected with judicial proceedings as to be considered part of [a] civil action for purposes of a fee award") to mean that "fees for administrative proceedings under 29 U.S.C. § 1132(g) should be recoverable only when the final judgment (or enforcement thereof) in the prevailing party's suit

---

⁹ <u>See</u>, ***Sullivan v. Hudson***, 490 U.S. 877, 892, 104 L.E d. 2d 941, 109 S. Ct. 2248 (1989) and ***Pennsylvania v. Delaware Valley Citizens' Council for Clean Air***, 478 U.S. 546, 560, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986).

depends on the administrative proceedings for which fees are being claimed." *Id. at 453-454*. Clearly, that is the case here.

The more recent decision of *Parke v. First Reliance Standard Life Insurance Company,*, 2002 U.S. Dist LEXIS 18762 (D. Minn. 2002)(attached as Exhibit 3) reviews Sixth Circuit and Ninth Circuit decisions regarding ERISA's fee-shifting statute as well as the U.S. Supreme Court decisions on fee-shifting statutes generally. In *Parke*, the Court concluded that "the fact that fees in this [ERISA] case were incurred prior to the start of judicial proceedings does not diminish their importance to the ultimate outcome" and the Court awarded the plaintiff the fees incurred in the administrative review process. *Id.*

During the June 1, 1999, to October 3, 2001, stage of the case, Mr. Jeffries incurred substantial legal expenses and given defendant's overall conduct and the satisfaction of the **King** Factors, this Court should exercise its discretion and shift the burden of those fees on to the defendant.

The shift of fees for the administrative review stage is also mandated because of the nature of ERISA actions. Because of the procedural peculiarities of ERISA, a plaintiff may present essentially no new evidence in the trial court, there is no trial, and no testimony. The District Court essentially serves as an appellate court of review. Accordingly, a plan participant must sufficiently and adequately account for its burdens of proof and address any procedure or legal obstacles posed by ERISA during the administrative review stage. Without this proper planning, a claim with merit may be defeated. For that reason substantial time and legal skill are necessary to prosecute a ERISA benefits case during the administrative review stage. And

given the complexities of ERISA and the high level of skill, expertise, and analysis it requires, a lay person must hire counsel to protect his/her rights.

This case especially necessitated an extremely high level of legal skill in a practice area with few such lawyers or law firms willing to represent plaintiffs/employees. It also required substantial investigation, review, and understanding of sophisticated medical concepts.

> 2. **Application of The King Factors To This Case Both Before The Complaint Was Filed And Since That Time.**

An application of the *King* Factors in assessing the shift of fees both for the administrative review stage of the case and for the post-Complaint stage of the case strongly confirms that a fee-shift is appropriate for fees incurred since June 1, 1999:

> 1) Culpability/Bad Faith: As detailed above and in Plaintiff's Merits Brief, evidence of defendant's culpability and bad faith in the administrative review process is abundant. This conduct no doubt was designed to create a multi-year delay jeopardizing Mr. Jeffries' financial capacity to pursue his benefits' claim.
>
> 2) Ability to Pay. There is no dispute that defendant has the ability to pay Mr. Jeffries' attorney fees and expenses.
>
> 3) Deterrent Effect. Here, the defendant made decisions wholly unsupported by the Administrative Record. Defendant also performed no assessment whatsoever of the evidence Mr. Jeffries submitted with his 2nd and 3rd Appeals. A shift of the fees incurred in the Administrative review stage here will have the effect of deterring plan administrators from taking the same gamble that defendant obviously took (i.e., neglecting a Claim, despite overwhelming evidence, in hope that the disabled participant may not financially survive the multi-year administrative review process and, therefore, preventing the plan administrator from getting caught or challenged) with the cost of the

   gamble presently being limited to the amount of the benefits the plan adnministrator would have paid before they took the risk.[10]

4.  <u>Common Benefit</u>. While this is not a class action, in challenging defendant's egregious bad faith conduct, Mr. Jeffries' pursuit of this action may cause defendant to act more honorably in administering other benefit claims. Moreover, as mentioned above, not all **King** Factors need to be established.

5.  <u>Relative Merits</u>. The relative merits of the parties positions are quite disparate. When it answered the Complaint and Plaintiff's First Set of Discovery Requests, defendant denied that Mr. Jeffries was disabled at all. A short time later, defendant conceded that the very Administrative Record on which it denied 3 years of benefits, supported the payment of benefits for 5 years. The fact that plaintiff could prevail on the issue of past due benefits without discovery and so early in the case underscore the weight of this factor in favor of shifting the payment of fees and expenses to defendant. And earlier in this action, Mr. Jeffries "prevailed" on defendant's first motion for summary judgment. Finally, fees should be shifted for the entire case even if this Court ultimately awarded no declaratory relief. <u>See</u>, ***Administrative Committee Of The Sea Ray***, *supra* ("unlike many fee-shifting statutes, [29 U.S.C. § 1132(g)] does not limit recovery of fees to prevailing parties.").

For these reasons, the Court should order the conduct of a hearing to determine the amount of the attorney fees and expenses incurred by Mr. Jeffries since June 1, 1999, which are appropriately shifted to defendant.

B.  <u>**Pre-Judgment Interest.**</u>

While defendant now concedes its obligation to pay Mr. Jeffries interest on the improperly withheld benefits *(Doc. 49, p. 4, f.n. 1)*, it did not make this concession until

---

[10]  <u>See</u>, ***Crosby v. Bowater Incorporated*** 262 F. Supp. 2d 804 (W.D. Mi. 2003)("without this deterrent effect, plan trustees might [act improperly] in hopes of not being caught . . . the award also is important for the purpose of fairly compensating the [participant]. Without the award, the [plan participant's] legitimate expectations of complete pension benefits (without the improper decrement) would be unnecessarily frustrated by the payment of the attorney fees themselves.")

September 3, 2003, and has not calculated or paid interest. The Sixth Circuit has long recognized that the district court may award prejudgment interest in its discretion in accordance with general equitable principles. *Hoover v. Provident Life & Accident Insurance Company*, 290 F.3d 801 (6th Cir. 2002). Mr. Jeffries is entitled to an award of prejudgment interest on the benefits defendant delinquently paid to him in February 2002 at the rate provided by the statutory post-judgment framework set forth in 28 U.S.C. §1961.[11]

### C. Post-Judgment Interest.

There should be no dispute that post-judgment interest is appropriate pursuant to 28 U.S.C. §1961.

### Conclusion

While disabled and ill, Mr. Jeffries fought the defendant for 3 years to receive the basic benefits to which he is entitled under the Policy and to bring defendant's inappropriate conduct to this Court's attention. Given the undisputed 5 year duration of Mr. Jeffries' illness and the unrebutted permanency of his illness, Mr. Jeffries is entitled to an award of benefits to age 67, especially since it is obvious that defendant will continue exercising bad faith. Amazingly, the defendant would not even make the effort to file its Administrative Record in this action because it desired to shield the Record from the Court.

---

[11] The federal post-judgment interest statute has been found to be a reasonable method for calculating prejudgment interest award in federal cases. *Ford v. Uniroyal Pension Plan*, 154 F.3d 613 (6th Cir. 1998). The federal rate is the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date payment became due, 28 U.S.C. §1961.

Defendant's overall conduct makes it obvious that it only recently approved Mr. Jeffries' Claim in order to avoid an adverse judgment in this matter and to deny Mr. Jeffries' future benefits within the friendly confines of its own internal review and appeal procedures. In this way, defendant intends to use ERISA as a "club" to further deny Mr. Jeffries the basic benefits to which he is entitled. Defendant hopes that Mr. Jeffries would not be emotionally or financially capable of surviving another administrative review and appeal process.

Defendant should not be permitted to again use its three year internal appeal process to exhaust Mr. Jeffries' resources and resolve and beat him into submission. No other conclusion is logically possible.

The Court should further award Mr. Jeffries attorney's fees (for June 1, 1999 to the present), costs, and interest.

                                            Respectfully submitted,

Dated: September 19, 2003                   _____
                                            Michael A. Roberts, Esq.
                                            GRAYDON HEAD & RITCHEY LLP
                                            511 Walnut Street, Suite 1900
                                            Cincinnati, Ohio 45202
                                            (513) 629-2799
                                            (513) 651-3836 - fax
                                            email:mroberts@graydon.com
                                            *Trial Counsel For Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was faxed and mailed to Edward T. Wahl, Esq., FAEGRE &BENSON LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402-3901 and Jim Cummings, Waite Schneider Bayless & Chesley, One West Fourth Street, Cincinnati, Ohio 45202, on this 19th day of September, 2003.

                                              _____