# Exhibit 1

**CONDENSED COPY**

```
 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF OHIO
 3                   WESTERN DIVISION
 4              CASE NO. C-1-01-680
 5
 6   ERIC L. JEFFRIES,         :
 7            Plaintiff,       :
 8            vs.              :
 9   PRUDENTIAL INSURANCE      :
10   COMPANY OF AMERICA,       :
11            Defendant.       :
12   - - - - - - - - - - -
13
14                   VOLUME II
15   DEPOSITION OF:  DANIEL DOUGHERTY
16            Friday, May 16, 2003
17
18
19
20
21            ROSENBERG & ASSOCIATES
22   Certified Shorthand Reporters & Videographers
23            425 Eagle Rock Avenue
24         Roseland, New Jersey 07068
25              (973) 228-9100
```

### Page 44

...have
...tor,
...ulting work
...or
...ne, was
...le?
...ne first
...all
...as a
...o
...memos
...anager
...ctly to

### Page 45

...th
...es?
...te to
...u
...r

### Page 46

1  A. Actually, it's Carrie Strohl.
2  Q. Carrie Strohl. And, again, she,
3  apparently, made the recommendation, although
4  there's not a record of it, and you authorized
5  it.
6     MR. WAHL: Is there a question?
7     MR. ROBERTS: That was the
8  question.
9  A. Actually, in that case, it appears
10 that I actually documented the SOAP note.
11 Q. So, you're the one that,
12 ultimately, made the decision in the third
13 appeal stage?
14 A. Yes.
15 Q. And then, in the third appeal
16 stage, you and Brian Fuller made the decision
17 to get, to deny the appeal?
18 A. The third appeal wasn't a denial.
19 Q. Right. It was approved, and it was
20 approved on the same medical information on
21 which you denied the second appeal. Right?
22 A. There's a couple things I want to
23 clarify.
24    First of all, on the third appeal,
25 Brian Fuller and I didn't make a decision one

### Page 47

1  way or another. That decision was made by our
2  appeals committee.
3  Q. Which consisted, at the time, of
4  Marcia Murray, who was involved early in the
5  case --
6     MR. WAHL: Objection to.
7  Q. -- Jen Nichols, who was involved in
8  denying the first appeal?
9  A. And Tara Warshawer.
10 Q. What's Tara Warshawer's position at
11 that time?
12    MR. WAHL: At which time?
13    MR. ROBERTS: The time of December
14 27, 2001 when this decision was made to approve
15 the third appeal.
16 A. I believe she was a team manager.
17 Q. Are there claims that Prudential
18 has approved that are on auto pay?
19 A. I'm not sure what you mean.
20 Q. You've never heard the phrase auto
21 pay?
22 A. I've heard the phrase auto pay,
23 never in connection with a long-term disability
24 claim.
25 Q. Oh, really. Are there claims that

### Page 48

1  have been approved and they're not subject to
2  further review, they just get their disability
3  check every month?
4  A. No.
5  Q. That doesn't exist?
6  A. No.
7  Q. So, if a guy's in a coma and has
8  been there for seven years, he's got to prove
9  he's disabled every month. Is that the case?
10    MR. WAHL: Objection.
11 A. In order to receive long-term
12 disability benefits, there are the requirements
13 to prove to disability.
14 Q. So, in a situation where you have
15 somebody in a coma, has been in a coma for [
16 years, has no likelihood of coming out of the
17 coma, do you have them examined every mon
18 have the attending physician's statement sent
19 to the company every month?
20 A. We require periodic proof of
21 disability. If you want a specific answer, no,
22 we don't require an attending physician's
23 statement every month, but we, certainly, do
24 require periodic proof of disability.
25 Q. How periodic, in that situation,

### Page 49

1  would you require proof of disability?
2  A. I can't recall that we have any
3  such situation. But, at a minimum, we would
4  require proof of disability, at least once
5  every two years.
6  Q. Are there any claims you have on
7  which it's a once every two years scenario?
8  A. Yes.
9  Q. Are there any claims you have where
10 it's a longer period of time than that?
11 A. No.
12 Q. Are there claims that you approved
13 for a period of five years or more where you
14 require monthly proof of disability?
15    MR. WAHL: Objection.
16 A. I'm not sure I understand your
17 question.
18 Q. Are there claims where the claimant
19 has been receiving benefits for a period equal
20 to or greater than five years, where you still
21 require monthly proof of disability?
22 A. There could be.
23 Q. Are there any that you can think
24 of?
25 A. Yes.

### Page 50

1  Q. What types of illnesses do those
2  individuals have that you can think of?
3  A. I can't think of any illnesses
4  offhand. You know, and maybe what you're
5  getting at is, we do require periodic proof of
6  disability. If somebody has a condition, is
7  that extremely well documented by medical, by
8  objective medical evidence, such as the
9  situation of somebody in a coma, or somebody
10 who's lost limbs, and it's clear and evident
11 that there's not a likelihood, but that the
12 person is totally disabled, at present, and
13 there is no likelihood of future improvement,
14 then we would require periodic proof of
15 disability, but we would only request it every
16 couple of years.
17     But there are many conditions where
18 present total disability isn't clear or the
19 opportunity for future recovery is based on
20 improvement in the condition or advances in
21 medical technology, where we would require more
22 frequent proof of disability.
23  Q. Even where the person, the
24 hypothetical person has been receiving benefits
25 continuously for five years or more?

### Page 51

1  A. Yes.
2  Q. And can you give me a condition
3  that someone suffers from? Because you said
4  you can think of some specific claims where
5  they have been paid for five years or more, yet
6  monthly proof is still required. What types of
7  illnesses are you, specifically, thinking of?
8     MR. WAHL: Objection.
9  Q. Don't tell me the name of the
10 claimant. I don't want to know. I just want
11 to know the condition.
12 A. Don't worry. I wasn't going to.
13 Q. This person or persons that you're
14 thinking, what is it that they're suffering
15 from has put them in a position where they're
16 getting benefits for five years continuously,
17 but still have to give monthly proof of loss?
18 A. A person who has --
19 Q. This is a specific case you're
20 giving me, not a hypothetical?
21 A. No, I'm giving you a hypothetical.
22 Q. Can you think of any specific
23 cases?
24 A. Not off the top of my head.
25 Q. When you made the decision to

### Page 52

1  approve the third appeal, was any consideration
2  given to the opinions of Mr. Jeffries' doctors
3  that this illness would be permanent?
4     MR. WAHL: Objection.
5     MR. ROBERTS: What's the basis of
6  that objection?
7     MR. WAHL: He's testified 15 times
8  he did not make a decision on the appeal.
9  Q. Okay. You were present when the
10 decision was made. Based on your observation
11 of those making the decision, was there any
12 consideration given to the fact that
13 Mr. Jeffries' physicians had suggested that
14 this would be a permanent illness?
15 A. Well, the group policy doesn't have
16 any requirement.
17 Q. I don't ask you if the policy said
18 --
19    MR. WAHL: Let him answer the
20 question, please.
21    MR. ROBERTS: He's not answering.
22    MR. WAHL: You interrupted him
23 before he finished his answer.
24 Q. Was any consideration, based on
25 your observations, was there any consideration

### Page 53

1  given to the fact that Mr. Jeffries' doctors
2  said this would be a permanent condition?
3  A. And as I was starting to say
4  before, the group policy doesn't require
5  permanent disability in order for benefits to
6  be approved. In fact, there's no mention of
7  permanent disability in the group policy.
8     So, what was at issue before the
9  appeals committee was whether or not
10 Mr. Jeffries was eligible for benefits under
11 the terms of the group policy at the time that
12 they were making that decision.
13 Q. So, no consideration was given to
14 the fact that his doctors suggested it would be
15 permanent. Is that correct?
16 A. It wasn't relevant to the
17 determination.
18 Q. Okay. Fine. I will accept that
19 answer now. Was there consideration given to
20 the fact that his doctors said it would be
21 permanent?
22 A. Um.
23 Q. You're struggling with an answer to
24 this question?
25 A. I'm struggling with answering what

**Responses and Replies**
1:01-cv-00680-HJW-TSH Jeffries v. Prudential Ins Co

### U.S. District Court [LIVE]

### LIVE - U.S. District Court, Southern District of Ohio

Notice of Electronic Filing

The following transaction was received from Cummins, James entered on 9/3/2003 at 4:05 PM EDT and filed on 9/3/2003
**Case Name:**       Jeffries v. Prudential Ins Co
**Case Number:**   1:01-cv-680
**Filer:**                Prudential Insurance Company of America, The
**Document Number:** 49

**Docket Text:**
RESPONSE in Opposition re [47] Motion for Summary Judgment *By Plaintiff* filed by Defendant Prudential Insurance Company of America, The. (Attachments: # (1) Exhibit "A" Page 1# (2) Exhibit "A" Page 2# (3) Exhibit "A" Page 3# (4) Exhibit "A" Page 4# (5) Exhibit "A" Page 5)(Cummins, James)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040326259 [Date=9/3/2003] [FileNumber=3291-0] [6
1e5039ac6050da9b7b46cac9d428a9f7c00900ae33203f3a38e06ff0dd336280980494
6e56d39ecd98fb74419ec8a7286371a1c258ba7902c1fc501db1561f8]]
**Document description:** Exhibit "A" Page 1
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040326259 [Date=9/3/2003] [FileNumber=3291-1] [7
bdabc3986eb1ec16a97e415aa2ea5ef666c0afc5c0e8e6a1ce0d3e8845e063df93dcd2
48bf969b1f05f25fddf884643cc28e8067e113a090b810eafef9cc1e3]]
**Document description:** Exhibit "A" Page 2
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040326259 [Date=9/3/2003] [FileNumber=3291-2] [2
2bfb9b5e65c250b869caceb2a7833cbc0a57e4f96464f16774ca635f9748307ccc967d
055c6f9f5cb16f522df2dbe1731c1eb501d1e29fc5e210006abfb6cd9]]
**Document description:** Exhibit "A" Page 3
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040326259 [Date=9/3/2003] [FileNumber=3291-3] [8
b2fdc129b406dba8a9547552c682f6f2795aaab45dec9f35a074a5ff4a559016ed2a9d
5e6f80d9879198f05bda22f965d3ef0177bfcaaadbd829fb6ccf4bcbd]]
**Document description:** Exhibit "A" Page 4
**Original filename:** n/a

**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040326259 [Date=9/3/2003] [FileNumber=3291-4] [5
464ab3ed4987472de669992d24f187171332a4c27ec6a0da152d2ccc364b107c4b4cf4
5d893408dc98b315558643b2d8352d075f74f2df4dd2840209992478d]]
**Document description:** Exhibit "A" Page 5
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040326259 [Date=9/3/2003] [FileNumber=3291-5] [8
6c018bb6e55cfb206f314165d7ad9d1e2443b5d498a2f142cc5e61aefd816dab8687f4
642aca75edab3e132027d8c3a907627f04892e350ba3059ed65123360]]

**1:01-cv-680 Notice will be electronically mailed to:**

James Rubin Cummins   jcummins@wsbclaw.com,

Michael A Roberts   mroberts@graydon.com

**1:01-cv-680 Notice will not be electronically mailed to:**

Michael F Cockson
Faegre & Benson
2200 Wells Fargo Center
90 S Seventh St
Minneapolis, MN 55402-3901

Edward T Wahl
Faegre & Benson
2200 Wells Fargo Center
90 S Seventh St
Minneapolis, MN 55402-3901