# Exhibit 3

LEXSEE 2002 U.S. Dist. LEXIS 18762

JULIE PARKE, Plaintiff, v. FIRST RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant.

Civil No. 99-1039 (JRT/FLN)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

2002 U.S. Dist. LEXIS 18762; 29 Employee Benefits Cas. (BNA) 1022

September 25, 2002, Decided

**DISPOSITION:**
Court found that defendant's initial denial of benefits was erroneous and that plaintiff was entitled to interest on delayed benefits as well as attorney's fees and costs.

CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff insured sued defendant plan administrator under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., seeking reinstatement of long-term disability benefits, interest on delayed benefits, recalculation of a Social Security benefits offset, attorney fees, and costs. After the administrator agreed to reinstate benefits, a bench trial was held on the remaining issues.

**OVERVIEW:** The insured, who had diabetes and resulting complications, worked in a job that required frequent standing and walking, long hours, and the ability to function under stress. The administrator initially denied the insured's disability claim on the basis that her occupation was sedentary; the administrator granted benefits following an administrative appeal, but only for a limited period. The insured claimed that she was entitled to interest on the two periods of delayed benefits. The court agreed, finding that the insured was entitled to interest even though it was not necessary for the court to order reinstatement of benefits. The insured's claim was equitable in nature and therefore was permitted under ERISA. The administrator's decisions were entitled to less-than-usual deference due to a financial conflict, and the court found that the administrator failed to adequately investigate the initial claim and also erred in finding that the insured's disability had ended. However, the administrator correctly calculated the offset for Social Security benefits. The insured was entitled to attorney fees and costs incurred during both litigation and the administrative process.

**OUTCOME:** The court ordered the insured to make submissions necessary for the court to determine the amount of interest due on the delayed benefits and the amount of attorney fees and costs.

**CORE TERMS:**
sedentary, diabetes, insured, total disability, insulin, disability benefits, restitution, long-term, summary judgment, job description, monthly, occupation, social security, offset, disabled, pump, abuse of discretion standard, beneficiary, disability, equitable, delayed, discretionary authority, administrative process, administrator, suspending, totally disabled, satisfactory proof, suspension, plan administrator, recovered

  

LexisNexis(TM) HEADNOTES - Core Concepts

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
HN1 Under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., an award of interest is available even when a plaintiff recovers benefits without resorting to litigation. Prejudgment interest is available under 29 U.S.C.S. § 1132(a)(3) so long as the plaintiff demonstrates that the plan administrator either breached his statutory obligations under ERISA or the terms of the governing plan.

**Civil Procedure > Remedies**
**Contracts Law > Remedies > Restitution**
HN2 Restitution actions are not necessarily equitable, but the characterization depends upon the nature of the underlying remedy. Restitution actions are "legal" when the plaintiff seeks to impose merely personal liability upon the defendant to pay a sum of money, such as in a breach of contract case. Actions are "equitable" when they seek to restore to the plaintiff particular funds or property in the defendant's possession.

**Estate, Gift & Trust Law > Trusts > Constructive & Resulting Trusts**
HN3 A plaintiff can seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff can clearly be traced to particular funds or property in the defendant's possession. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
HN4 A plaintiff cannot recover interest on delayed benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., absent a showing that defendant breached ERISA or the terms of the plan.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
HN5 The Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., allows plan beneficiaries to seek judicial review of a benefits determination. 29 U.S.C.S. § 1132(a)(1)(B). Where a plan gives the administrator discretionary authority to determine eligibility of benefits, courts are to review an administrator's decision for an abuse of discretion. Otherwise, a de novo standard of review applies.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
HN6 In a case under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., a court may apply a less deferential review if a plaintiff demonstrates through the presentation of material, probative evidence that (1) a

  

palpable conflict of interest or serious procedural irregularity existed which (2) caused a serious breach of the plan administrator's fiduciary duty to her. In order to satisfy the second prong of this test, the plaintiff must demonstrate that the conflict or procedural irregularity has some connection to the substantive decision reached.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciary Responsibilities**
HN7 A dual relationship as both the insurer and plan administrator of an Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., plan does not create a conflict per se.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
HN8 Under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., the abuse of discretion standard is inherently flexible, which enables reviewing courts to simply adjust for the circumstances.

**Labor & Employment Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
**Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies**
HN9 Under 29 U.S.C.S. § 1132(g)(1), a court has discretion to award a reasonable attorney fees and costs to either party. In exercising this discretion, courts must consider the following factors: (1) the degree of culpability or bad faith which can be assigned to the opposing party; (2) its ability to pay; (3) the potential for deterring others in similar circumstances; (4) whether the moving party sought to benefit all plan participants or beneficiaries or to resolve a significant legal question regarding the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq.; and (5) the relative merits of the parties' positions. Although prevailing plan defendants ordinarily should not recover fees against an unsuccessful beneficiary in the absence of bad faith on the beneficiary's part, a plan beneficiary who succeeds in an ERISA action should recover attorney fees unless special circumstances would render the award unjust. The unsuccessful party has the burden of proving that such circumstances exist, and the absence of bad faith is not a special circumstance.

**COUNSEL:**
*1 Mark M. Nolan, STAPLETON, NOLAN, MacGREGOR, & THOMPSON, St. Paul, MN, for plaintiff.

Joshua Bachrach, RAWLE & HENDERSON LLP, Philadelphia, PA, for defendant.

**JUDGES:**
JOHN R. TUNHEIM, United States District Judge.

**OPINIONBY:**
JOHN R. TUNHEIM

**OPINION:**

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT





Plaintiff Julie Parke brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., seeking reinstatement of her long-term disability benefits, interest on her delayed benefits, attorneys fees and prejudgment interest. This matter was tried before the Court on November 5, 2001 to resolve the following issues: 1) whether defendant breached its fiduciary duties under ERISA in denying plaintiff's application for benefits initially and/or in suspending her benefits; 2) whether defendant is making proper offsets of plaintiff's social security benefits; and 3) whether plaintiff is entitled to attorneys fees and costs. Based on the entire record and proceedings and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

1. All of the Findings of Fact set *2 forth herein are undisputed or have been proved by a preponderance of the evidence.

2. To the extent the Court's Conclusions of Law include what may be considered Findings of Fact, they are incorporated herein by reference.

3. Plaintiff is a 51-year old woman who is severely disabled as a result of complications from diabetes, from which she has suffered since childhood.

4. On June 1, 1998, she ceased working at her job as an account executive at Petry Media Corporation/Blair Television.

5. On August 18, 1998, Petry Media Corporation submitted an application for long-term disability benefits on Parke's behalf to defendant First Reliance Standard under a long-term disability policy, Policy No. LSC 020403. n1

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 There has been some confusion over which policy was in effect at the time of plaintiff's application for benefits. The policy relied on by the parties on summary judgment is different from the one defendant relied on at trial. Defendant claims that the policy submitted at trial, which bears an effective date of August 1, 1997, is the correct policy. The Court therefore relies on that policy for purposes of this order.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -
*3

6. The policy is an "own occupation" policy, which provides benefits when the insured "cannot perform the material duties of his/her regulation occupation." Policy at 2.1. The insuring clause of the policy states:

We will pay a Monthly Benefit if an Insured:

(1) is Totally Disabled as the Result of a Sickness or Injury covered by this Policy;

(2) is under the regular care of a Physician;

(3) has completed the Elimination Period; and

(4) submits satisfactory proof of Total Disability to us.

  

Policy at 7.0.

7. Under the policy, monthly benefits are terminated on the earliest of: "(1) the date the Policy terminates; (2) the date the Insured ceases to meet the Eligibility Requirements; (3) the end of the period for which Premium has been paid for the Insured; or (4) the date the Insured enters military service (not including Reserve or National Guard)." Policy at 5.0.

**I. Initial Denial**

8. As stated above, Petry Corporation filed an application for benefits on plaintiff's behalf on August 18, 1998.

9. On August 26, 1998, First Reliance wrote to plaintiff acknowledging receipt of her claim for long-term disability benefits.

10. On *4 August 31, 1998 and September 2, 1998, First Reliance wrote to plaintiff's treating physicians requesting copies of plaintiff's medical records and asking them to complete various forms.

11. The job analysis form completed by plaintiff's employer lists plaintiff's job title as "account executive." In describing the physical aspects of this job, the employer stated that standing, walking and sitting are required frequently and that balancing, stooping, kneeling, crouching, crawling, reaching/working overhead and climbing are required occasionally. n2

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 Occasionally is defined as 1% to 33% of the time; frequently is defined as 34% to 66% of the time.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

12. In the employee's statement, plaintiff stated that the physical and mental demands of her job require her to be at work from 8:30 a.m. every day until the job was completed which frequently was 7:00-9:00 p.m. working at a rapid pace with multiple demands on her time.

13. In a physician's statement completed by one of plaintiff's treating physicians, Dr. Mark *5 Stesin, he stated that plaintiff is able to sit and drive 5-8 hours a day and walk 1-3 hours a day. She can bend, squat, climb, reach above the shoulder, kneel, crawl and use feet on a continuous basis n3 and can lift and carry objects consistent with medium work. When asked whether plaintiff has achieved maximum medical improvement, Dr. Stesin answered "no."

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 Continuous is defined as 67% to 100%.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

14. In a letter report dated July 20, 1998, Dr. Stesin described plaintiff's diabetes as "brittle," which means that:

she has rapid and large fluctuations of her glucose values over very short time periods. The brittleness and lability of her glucose values on a daily basis

  

causes her to frequently feel exhausted and weak, and interferes with her inability sic to concentrate at work.

Dr. Stesin also noted that plaintiff was now using a subcutaneous insulin pump instead of taking insulin injections. He stated that "while it is hoped that the pump will help her daily glucose values, the underlying *6 brittleness of her diabetes will continue to make it difficult to regulate her daily glucose values on a long-term basis." On page two of the same report, Dr. Stesin described plaintiff's job as "highly demanding," which frequently requires long hours (55-60 hours per week). "The pace is hectic and demanding, and mealtimes are inconsistent due to the nature of her work . . . . Additionally, the brittleness of her diabetes further increases her job pressure."

15. In a physical capacity questionnaire dated August 31, 1998, Dr. Stesin states that plaintiff can sit 6-8 hours a day, stand 3-6 hours, but can only walk 1-3 hours a day. Dr. Stesin noted that these limitations are permanent.

16. In another physician's report dated September 25, 1998, Dr. Stesin indicates that plaintiff's hypoglycemic episodes are moderate to severe and occur one to three times a day. When asked whether plaintiff's condition is expected to 1) improve; 2) regress or 3) remain the same, Dr. Stesin states that plaintiff's condition is expected to "remain the same."

17. The initial claim file also included a job description of plaintiff's position at Blair Television. n4 This description states that an account *7 executive is required to "represent team stations on a continual basis; be a marketer; go on higher level calls to sell special opportunities; execute constant sales calls; provide prompt and accurate responses to management requests." The job also requires a "willingness to put in as much time as needed to successfully complete the job" and an "ability to function in a high stress environment."

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n4 At trial, there was some dispute over whether a job description was included in the file during the initial claim. Upon review of the record, the Court concludes that a job description was part of the original file. In a cover letter dated September 15, 1998, Nancy Sullivan of Petry Media sent a copy of plaintiff's job description to Rosetta Davis. FRSL 000678-000679.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

18. Plaintiff's claim file was reviewed by Kathy Young, a registered nurse. In a summary report dated September 23, 1998, she states:

It would appear that over time cl claimant has developed a large number of chronic complications due to diabetes--diabetes *8 is poorly controlled and it seems tx treatment and insulin reactions are interfering with ability to function at appropriate levels at home and in the workplace. R & L's restrictions and limitations would be expected to be sedentary in nature but not on a consistent (daily) basis. Get office notes and all diagnostic studies from Dr. Stesin from 1/1997 to present.

19. On November 6, 1998, First Reliance denied plaintiff's claim for disability benefits on the basis that her occupation was sedentary and her medical condition allowed her to do sedentary work. n5

  

Case 1:01-cv-00680-HJW-TSH   Document 51-4   Filed 09/19/2003   Page 8 of 18

2002 U.S. Dist. LEXIS 18762, *8; 29 Employee Benefits Cas. (BNA) 1022

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n5 The pertinent portion of the letter reads as follows:

The available medical reports on file show that you have type 1 diabetes, over the years and developed chronic complications, your diabetes appears to have been sufficiently controlled with an infusion pump, and you have not had any recurrence of your cancer. Based on the pertinent medical information outlined above, your physical capacities are within the sedentary activity levels.

According to Department of Occupational Titles (DOT), your occupation is sedentary work.

Given these facts, we have determined that you do not meet your group policy's definition of Total Disability as your medical condition does not preclude you from performing sedentary work. Consequently your claim must be denied.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -
*9

20. Thereafter, plaintiff retained an attorney and appealed the denial administratively on February 3, 1999, after requesting and receiving an extension of time to do so.

21. On appeal, plaintiff argued, among other things, that First Reliance had misclassified her occupation as sedentary when it was actually light duty and had failed to take into account all of her disabling conditions and the relevant medical evidence documenting them. She also submitted additional documentation in support of her claim, including affidavits from co-workers describing Parke's job duties; an additional medical report from Dr. Stesin dated February 1, 1999; the description of an occupation from the DOT which plaintiff claimed better supported her position; and information on diabetes.

22. By letter dated June 4, 1999, First Reliance informed plaintiff that it was reversing its original denial of benefits and granting her application for long-term disability benefits effective June 1, 1998.

**II. Suspension of Benefits**

23. In the same June 4, 1999 letter, First Reliance informed plaintiff that "medical information contained in plaintiff's claim file support total disability only to January *10 30, 1999." n6

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n6 Although the letter states March 30, 1999, the parties confirmed at oral argument for the summary judgment motions that this was a clerical error. The correct date is January 30, 1999.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

24. First Reliance made requests for medical records from Dr. Stesin on May 24, 1999 and again on May 27, 1999.

25. In a letter dated June 9, 1999, plaintiff's counsel disputed defendant's ability to unilaterally suspend plaintiff's benefits after January 30, 1999. According to plaintiff, the burden shifted to defendant to demonstrate that

  

plaintiff is not disabled.

26. On June 21, 1999, counsel for defendant responded to plaintiff's June 9, 1999 letter. He emphasized that the insuring clause of the policy entitles plaintiff to benefits upon "satisfactory proof of total disability." According to defendant, the file supported plaintiff's disability only through January 30, 1999.

27. On July 7, 1999, plaintiff filed the instant lawsuit seeking, among other relief, reinstatement of her long-term disability benefits. *11

28. On September 9, 1999, First Reliance received a copy of an updated report from Dr. Stesin. The report is dated August 9, 1999 and carries a date stamp of August 11, 1999. It states:

I understand from Julie Parke that your company has discontinued her benefits because there has not been satisfactory proof of disability. I find that surprising.

The conditions that I described in detail and her medical records and reports provided to you demonstrate a permanent condition, which to a reasonable degree of certainty, will not improve.

She is not only disabled, she is permanently totally disabled.

29. On September 24, 1999, counsel for defendant notified plaintiff that it was reinstating her benefits. Plaintiff's benefits were officially reinstated on October 14, 1999. n7

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n7 As a result, plaintiff's request for reinstatement of her long-term disability benefits in Count I of her complaint is moot. Nonetheless, she still seeks interest on the benefits that were suspended from February 1, 1999 to October 14, 1999.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

*12

### III. Offset for Social Security

30. On October 17, 1999, plaintiff was awarded Social Security disability benefits, retroactive to November 1998.

31. The benefit provisions section of the Policy computes the monthly benefit payable to an insured as follows:

BENEFIT AMOUNT: To figure the benefit amount payable:

(1) multiply an Insured's Covered Monthly Earnings by the benefit percentage(s), as shown on the Schedule of Benefits page; n8

(2) take the lesser of the amount:

(a) of step (1) above; or

  

Case 1:01-cv-00680-HJW-TSH   Document 51-4   Filed 09/19/2003   Page 10 of 18

2002 U.S. Dist. LEXIS 18762, *12; 29 Employee Benefits Cas. (BNA) 1022

(b) the Maximum Monthly Benefit as shown on the Schedule of Benefits page; and

(3) subtract Other Income Benefits, shown as follows, from step (2) above.

OTHER INCOME BENEFITS: Other Income Benefits are benefits resulting from the same Total Disability for which a Monthly Benefit is payable under this Policy. These Other Income Benefits are:

\* \* \*

(7) disability or Retirement Benefits under the United States Social Security Act . . . for which:

(a) an Insured is eligible to receive because of his/her Total Disability.

Policy at 7.0.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n8 The Schedule of Benefits provides that: "The Monthly Benefit is an amount equal to 60% of Covered Monthly Earnings, payable in accordance with the section entitled Benefit Amount." Policy at 1.0.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -
*13

32. Plaintiff's social security benefit is around $ 1,500 a month, but she receives around $ 1,123.30 after tax withholding.

## CONCLUSIONS OF LAW

### I. Jurisdiction

The Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1331. Venue is proper pursuant to § 28 U.S.C. § 1391(b)(2).

### II. Interest on Delayed Benefits

Plaintiff argues that defendant's actions in denying plaintiff's claim for benefits initially and in suspending her benefits were in violation of the plan and in breach of its fiduciary duties under ERISA. For relief, plaintiff seeks equitable restitution in the form of interest on the two periods of delayed benefits. The issue of whether interest as restitution under the circumstances presented here was an issue with which the Court dealt at great length in the summary judgment order. Memorandum Opinion and Order Denying Cross Motions for Summary Judgment and Denying Motion for Class Certification, Civ. No. 99-1039 (Dec. 28, 2000) (JRT/FLN) at 6-8 (hereinafter referred to as "December 28, 2000 Order"). Defendant argued that interest is recoverable only when a plaintiff is awarded *14 benefits through a judgment against the plan. After a lengthy discussion and review of the applicable caselaw, the Court rejected that argument and concluded that HN1 an award of interest is available even when a plaintiff recovered benefits without resorting to litigation. Relying primarily on another decision from this District, *Jackson v. Fortis Benefits Ins. Co.*, 105 F. Supp. 2d 1055, 1056 (D. Minn. 2000), the Court held that prejudgment interest is available under § 1132(a)(3) so long as plaintiff demonstrates that the plan administrator either breached his statutory obligations under ERISA or the terms of the governing plan.

  

Defendant now argues that a recent Supreme Court decision, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 151 L. Ed. 2d 635, 122 S. Ct. 708 (2002), calls into question the validity of the leading authority in the Eighth Circuit on this issue, *Jackson v. Fortis Benefits Ins. Co.*, 245 F.3d 748 (8th Cir. 2001). The Court disagrees. *Knudson* involved an ERISA plan provision that required beneficiaries to reimburse the plan if they recovered any money from a third party. 122 S. Ct. at 711. Knudson, the defendant, was *15 injured in a car accident, and her medical expenses were covered by Great-West on behalf of her husband's health and welfare plan. *Id*. Knudson sued the car company in tort and recovered an additional sum of money in a settlement agreement. *Id*. Great-West then sued Knudson under ERISA § 502(a)(3) when she refused to pay the plan monies she recovered from her settlement.

Great-West claimed that its suit was for restitution and was therefore an equitable action permitted under ERISA. The Supreme Court disagreed, noting that HN2 restitution actions are not necessarily equitable, but the characterization depends upon the nature of the underlying remedy. 122 S. Ct. at 714. The Court stated that restitution actions are "legal" when the plaintiff seeks to impose "merely personal liability upon the defendant to pay a sum of money," such as in a breach of contract case. *Id*. (quoting Restatement of Restitution § 160, cmt. a(1936)). Actions are "equitable" when they seek "to restore to the plaintiff particular funds or property in the defendant's possession." *Id*. The Court concluded that Great-West's suit to recover "money due and owing under a contract" from a third *16 party was legal, not equitable, because Great-West was merely trying to hold Knudson personally liable for benefits Great-West had conferred upon her. Therefore, the Court held that the action could not be brought under ERISA § 502(a)(3), which permits only equitable relief.

In this case, the nature of plaintiff's suit for restitution is equitable, not legal. In *Knudson*, the Court explained that HN3 "a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." 122 S. Ct. at 714. The Court continued: "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." 122 S. Ct. at 714-15. That is precisely what plaintiff seeks to do here. Her claim is that First Reliance has in its possession monies rightfully belonging to her--benefits due under the plan. By not awarding her benefits during the *17 periods which she claims were rightfully owed to her, defendant made a profit on that money in the form of interest earned. Plaintiff merely seeks to have defendant disgorge the interest it earned on the money due to her. n9 Thus, for the above-stated reasons, the Court concludes that *Knudson* does not alter the Court's previous determination.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n9 *Knudson* is distinguishable on an additional basis as well. There, the Court noted that the funds sought by Great-West were not even in Knudson's possession, but were committed to trust accounts for her medical care and attorney's fees. 122 S. Ct. at 716. Because the funds were not in Knudson's possession, it would be impossible to impose a constructive trust upon them for Great-West's benefit.





Case 1:01-cv-00680-HJW-TSH   Document 51-4   Filed 09/19/2003   Page 12 of 18

2002 U.S. Dist. LEXIS 18762, *17; 29 Employee Benefits Cas. (BNA) 1022

- - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -

A. Breach

As explained above, HN4 plaintiff cannot recover interest on delayed benefits absent a showing that defendant breached ERISA or the terms of the plan. *Jackson*, 245 F.3d at 750. Under the facts of this case and as framed in the order [*18] for motions for summary judgment, the question as to the first period of interest claimed is whether defendant's initial denial of plaintiff's claim for benefits was erroneous. Before making this determination, the Court's first task is to determine the applicable standard of review. This is an issue of great debate in many ERISA cases and this case is no exception. HN5 ERISA allows plan beneficiaries to seek judicial review of a benefits determination. 29 U.S.C. § 1132(a)(1)(B). "Where a plan gives the administrator 'discretionary authority to determine eligibility of benefits,'" courts are to review an administrator's decision for an abuse of discretion. *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989)). Otherwise, a *de novo* standard of review applies.

At summary judgment, defendant argued that a clause in the policy conferred the requisite grant of discretionary authority to trigger the more deferential abuse of discretion standard of review. The clause relied on by defendant provided that First Reliance will pay a monthly benefit to an insured [*19] if, among other requirements, the insured "submits satisfactory proof of Total Disability to us." Upon careful review of the relevant caselaw and the applicable language, the Court concluded that the language relied on by defendant was not sufficient to confer discretion on the administrator. December 28, 2000 Order at 9-12. Accordingly, the Court held that it would review the administrator's determinations de novo. Thereafter, the Eighth Circuit interpreted identical policy language and reached the same conclusion as this Court. *Walke v. Group Long Term Disability Ins.*, 256 F.3d 835, 839-40 (8th Cir. 2001). With the decision in *Walke*, the Court believed this issue was fully resolved. However, on November 2, 2001, just days before trial was to begin, defendant informed the Court that it had discovered language in the Policy which confers a clear grant of discretionary authority. The provision states:

First Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine [*20] eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

Policy at 4.0.

In light of this discovery, defendant argued once again that defendant's initial denial must be reviewed under an abuse of discretion standard. Plaintiff argues that defendant has waived this argument since it failed to exercise due diligence in locating the language earlier. In a motion hearing held before the start of trial, counsel for defendant explained that when plaintiff's file was sent to them, defendant sent the policy that was not in effect when plaintiff's claim was submitted. According to defendant's counsel, the policy it had at trial and which is located in its record file at FRSL000005 to FRSL000023 is the policy that was in effect at the time plaintiff's claim was submitted in August 1998. It bears an effective date of August 1997. The Court reluctantly held that in light of this clear grant of discretionary language, the Court would review the plan's determination under an abuse of discretion standard, but added that

  

it would consider plaintiff's arguments that less deference should be afforded defendant under *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998). *21 n10

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n10 After trial, the Court reviewed the policy that was submitted as part of the summary judgment motions. The Court discovered that this policy contains the same discretion granting language. *See* Aff. of Mark Nolan, Exh B, Policy at 4.0 ("The claims fiduciary has the discretionary authority to interpret the Plan and the insurance certificate and to determine eligibility for benefits"). While this fact strengthens plaintiff's waiver argument, the Court will stand by its pretrial ruling on this issue.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Under *Woo* and its progeny, HN6 a court may apply a less deferential review if plaintiff demonstrates through the presentation of material, probative evidence that: "1) a palpable conflict of interest or serious procedural irregularity existed which 2) caused a serious breach of the plan administrator's fiduciary duty to her." *Woo*, 144 F.3d at 1160; *Barnhart v. UNUM Life Ins. Co. of America*, 179 F.3d 583, 588 (8th Cir. 1999); *Sahulka v. Lucent Technologies, Inc.*, 206 F.3d 763, 768 (8th Cir. 2000); *22 *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 947 (8th Cir. 2000). In order to satisfy the second prong of this test, plaintiff must demonstrate that "the conflict or procedural irregularity has 'some connection to the substantive decision reached.'" *Woo*, 144 F.3d at 1161 (quoting *Buttram v. Central States S.E. & S.W. Areas Health & Welfare Fund*, 76 F.3d 896, 901 (8th Cir. 1996)).

In this case, plaintiff has presented evidence of a financial conflict. Defendant serves as both the insurer and plan administrator. Although the Eighth Circuit has stated that HN7 such a dual relationship does not create a conflict *per se*, *Woo*, 144 F.3d at 1161, n.2, defendant has not presented a persuasive argument that ameliorates the structural conflict. *Farley v. Arkansas Blue Cross and Blue Shield*, 147 F.3d 774, 777 (8th Cir. 1998). Plaintiff has also shown a connection between the conflict and the substantive decision reached. In denying plaintiff's initial claim for benefits, defendant selected a DOT which classified plaintiff's job as sedentary despite clear evidence in the record that plaintiff's position was not *23 sedentary. In addition, the Court is troubled by the fact that defendant only had a nurse review plaintiff's claim. *Compare Woo*, 144 F.3d at 1161 (plan administrator failed to use proper judgment by merely having in-house medical consultant review claim) *with Barnhart*, 179 F.3d at 589 (plan administrator acted prudently by having medical evidence reviewed by outside medical examiners). These actions demonstrate that defendant did not thoroughly investigate the claim and failed to use proper judgment. *Woo*, 144 F.3d at 1161 (citing Restatement (Second) of Trusts § 187 cmt. h. (1959)). Consistent with the sliding scale approach outlined in *Woo*, the Court thus takes these circumstances into account in its analysis and reviews defendant's decision with less deference than under the traditional abuse of discretion standard. *Id.* at 1162 (explaining that HN8 the abuse of discretion standard is "inherently flexible, which enables reviewing courts to simply adjust for the circumstances").

1. Initial Denial

The Court has thoroughly reviewed the evidence contained in the file during the initial claim under the standard *24 above and finds the evidence

  

insufficient to support its denial of benefits. The job analysis prepared by plaintiff's employer indicated that the job required standing and walking frequently, which is defined as 34%-64% of the time. However, the Dictionary of Occupational Titles, which defendant relied on in classifying plaintiff's position and in denying her claim, defines sedentary work as follows:

S-Sedentary Work--Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. **Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.**

(Emphasis added.) Furthermore, plaintiff's job description indicated that plaintiff's occupation was fast-paced, requiring the execution of constant sales calls; the ability to function in a high stress environment; *25 a willingness to put in as much time as needed to successfully complete the job, to be very detail oriented and have strong organizational skills. At oral argument, counsel for defendant argued that it was the additional materials submitted on appeal, including a copy of plaintiff's job description, which compelled defendant to reverse its decision and award plaintiff benefits. However, a review of the record reveals that a copy of the plaintiff's job description was part of the original record. The job description is clearly inconsistent with sedentary work described above. In sum, the defendant has simply failed to point to any evidence in the initial record which supports its determination that plaintiff's occupation was sedentary. The absence of this evidence demonstrates that the defendant failed to properly investigate plaintiff's claim. The Court thus concludes that defendant's initial denial of benefits was erroneous and that plaintiff is thus entitled to interest for this time period. n11

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n11 The Court adds that it would reach the same conclusion even if it had applied the traditional abuse of discretion standard argued by defendant.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -
*26

### 2. Suspension of Benefits

The second aspect of plaintiff's claim for interest involves defendant's suspension of plaintiff's benefits. At trial, counsel for defendant claimed that it was justified in suspending plaintiff's benefits because some of the medical records in the file indicated that plaintiff's condition had improved with use of an insulin pump.

The Court concludes that defendant breached its statutory duties under ERISA and the plan in suspending plaintiff's benefits even under the most deferential standard of review. At the time defendant suspended her benefits in June 1999, the records already in defendant's possession supported plaintiff's total disability beyond January 30, 1999. Indeed, a February 1, 1999 letter from Dr. Stesin concluded that plaintiff "clearly cannot perform the substantial and material duties of her job on a continuous basis due to the fact that her diabetes is brittle, she has recurrent hypoglycemic episodes, and she has

  

Case 1:01-cv-00680-HJW-TSH     Document 51-4     Filed 09/19/2003     Page 15 of 18

2002 U.S. Dist. LEXIS 18762, *26; 29 Employee Benefits Cas. (BNA) 1022

intractable, sever, painful, peripheral, diabetic neuropathy." Although defendant relies on statements in the record that it claims demonstrate that plaintiff's condition was improving through use of an insulin pump, Dr. [*27] Stesin qualified each of these statements, often within the same sentence. For instance, in the same February 1, 1999 letter, Dr. Stesin explains that "while her recent diabetes control has improved with the use of a subcutaneous insulin infusion pump, **her diabetes remains brittle and extremely difficult to control.**" (Emphasis added.) In the next paragraph, he further explains: "While I anticipate that the frequency of her insulin reactions will decrease with the use of an insulin pump, **her hypoglycemia unawareness will not improve, and I anticipate she will continue to encounter difficulty with insulin reactions**

PAGE 14
        2002 U.S. Dist. LEXIS 18762, *26; 29 Employee Benefits Cas. (BNA) 1022

intractable, sever, painful, peripheral, diabetic neuropathy." Although defendant relies on statements in the record that it claims demonstrate that plaintiff's condition was improving through use of an insulin pump, Dr. *27 Stesin qualified each of these statements, often within the same sentence. For instance, in the same February 1, 1999 letter, Dr. Stesin explains that "while her recent diabetes control has improved with the use of a subcutaneous insulin infusion pump, her diabetes remains brittle and extremely difficult to control." (Emphasis added.) In the next paragraph, he further explains: "While I anticipate that the frequency of her insulin reactions will decrease with the use of an insulin pump, her hypoglycemia unawareness will not improve, and I anticipate she will
cnly receives approximately $ 1,200 after tax withholding. Plaintiff claims the deduction of the gross amount rather than the net amount is in violation of the policy language, which provides that the insured will receive a monthly benefit of an amount equal to 60% of covered monthly earnings.

Upon review of the pertinent policy language, the Court concludes that the offset is not improper. The policy provides, in relevant part, as follows:

BENEFIT AMOUNT: To figure the benefit amount payable:

(1) multiply an Insured's Covered Monthly Earnings by the benefit percentage(s), as shown on the Schedule of Benefits page; n13

(2) take the lesser of the amount:

(a) of step (1) above; or

(b) the Maximum Monthly Benefit as shown on the Schedule of Benefits page; and

(3) subtract Other Income [*32] Benefits, shown as follows, from step (2) above.

OTHER INCOME BENEFITS: Other Income Benefits are benefits resulting from the same Total Disability for which a Monthly Benefit is payable under this Policy. These Other Income Benefits are:

* * *

  

(7) disability or Retirement Benefits under the United States Social Security Act . . . for which:

(a) an Insured is eligible to receive because of his/her Total Disability.

The clear language of the policy quoted above provides that the offset applies to social security benefits to which a claimant is "eligible to receive." It does not say the amount **actually** received. Plaintiff has elected to tell the Social Security Administration to deduct from her monthly social security benefit certain money for taxes because of her husband's tax liability. However, that does not change the wording of the policy, which clearly entitles defendant to deduct the amount plaintiff is "eligible" to receive. *Lake v. Metropolitan Life Ins.*, 73 F.3d 1372, 1379 (6th Cir. 1996) (enforcing unambiguous terms of plan in determining offset for social security benefits). For these reasons, plaintiff's claim *33 to correct the offset is denied.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n13 The Schedule of Benefits provides that: "The Monthly Benefit is an amount equal to 60% of Covered Monthly Earnings, payable in accordance with the section entitled Benefit Amount." Policy at 1.0.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

### IV. Attorney Fees

Finally, plaintiff asserts that she is entitled to recover attorney fees and costs incurred in bringing this action as well as the fees and costs incurred for work performed during the administrative process. HN9 Under 29 U.S.C. § 1132(g)(1), the Court has discretion to award a reasonable attorney fees and costs to either party. In exercising this discretion, courts must consider the following factors: (1) the degree of culpability or bad faith which can be assigned to the opposing party, (2) its ability to pay, (3) the potential for deterring others in similar circumstances, (4) whether the moving party sought to benefit all plan participants or beneficiaries or to resolve a significant legal question regarding ERISA, and (5) the relative *34 merits of the parties' positions. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1329 (8th Cir. 1995). Although prevailing plan defendants ordinarily should not recover fees against an unsuccessful beneficiary in the absence of bad faith on the beneficiary's part, *Maune v. International Bd. of Elec. Workers, Local No. 1, Health and Welfare Fund*, 83 F.3d 959, 964 (8th Cir. 1996), a plan beneficiary who succeeds in an ERISA action should recover attorney fees unless special circumstances would render the award unjust, *Welsh v. Burlington N., Inc., Employee Benefits Plan*, 54 F.3d 1331, 1342 (8th Cir. 1995). The unsuccessful party has the burden of proving that such circumstances exist, and the absence of bad faith is not a special circumstance. *Id.*

First Reliance has not persuaded the Court that "special circumstances" make an award of attorney fees unjust in this case. Furthermore, consideration of the above factors weigh in favor of plaintiff. Defendant is financially able to pay the fees and costs incurred by plaintiff in connection with this litigation. Awarding fees will also deter defendant and other similar entities from repeating *35 the actions taken in this case. Moreover, plaintiff sought and succeeded in resolving a significant legal question under ERISA--whether a plaintiff can recover interest on delayed benefits as equitable restitution. The

  

Case 1:01-cv-00680-HJW-TSH   Document 51-4   Filed 09/19/2003   Page 17 of 18

2002 U.S. Dist. LEXIS 18762, *35; 29 Employee Benefits Cas. (BNA) 1022

Court thus concludes that an award of attorney fees and costs is appropriate in this case.

The final issue the Court must resolve is whether plaintiff is entitled to fees and costs incurred for work performed during the administrative process. The Court reviewed this issue at length in its December 28, 2000 Order denying the parties' cross-motions for summary judgment. *Id.* at 18-21. In that order, the Court recognized that the two circuits to have addressed this issue had concluded that such fees are not recoverable in an ERISA action. *Id.* at 19 (citing *Anderson v. Procter & Gamble Co.*, 220 F.3d 449, 456 (6th Cir. 2000); *Cann v. Carpenters' Pension Trust Fund for N. Cal.*, 989 F.2d 313, 317 (9th Cir. 1993). The Court explained that, while the *Cann* court's analysis has some merit, its reasoning is not beyond criticism. *Id.* The Court reviewed two Supreme Court decisions, *Sullivan v. Hudson*, 490 U.S. 877, 892, 104 L. Ed. 2d 941, 109 S. Ct. 2248 (1989) *36 and *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986), and found that the policy considerations influencing those decisions apply in equal measure in this ERISA action. The fact that the fees in this case were incurred prior to the start of judicial proceedings does not diminish their importance to the ultimate outcome. December 28, 2000 Order at 20.

Although the Court did not resolve the issue in its prior order, the Court resolves it now in plaintiff's favor for the reasons stated in that opinion. Accordingly, the Court concludes that plaintiff is also entitled to fees and costs incurred for work performed during the administrative process. Plaintiff shall have 30 days from the date of this order to submit a brief and affidavit(s) setting forth the attorney fees and costs expended in prosecuting this litigation and the administrative process. Defendant may file a response thereafter, if it so chooses, within 30 days of the service of plaintiff's brief. Finally, the record is not clear regarding the actual time spans of the two periods of delayed benefits in question or the percentage of interest that applies to each. Accordingly, *37 the Court requests that the parties submit briefs, according to the time limits described above, regarding the amount of interest owed for the two periods in question.

**ORDER**

Based on the submissions of the parties, the arguments of counsel, and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant shall pay to the plaintiff interest on delayed benefits in an amount to be determined by the Court. In order to make this determination, plaintiff shall submit within ten (10) days of this Order a brief which sets forth the amount of interest it claims is owed for the two time periods in question. Defendant may respond ten (10) days after the plaintiff's submission.

2. Within thirty (30) days of this Order, Plaintiff shall submit a brief and affidavit(s) setting forth the attorney's fees and costs it expended prosecuting this lawsuit and during the administrative process. Defendant may respond within thirty (30) days after receipt of the plaintiff's submission.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 25, 2002 at Minneapolis, Minnesota.

JOHN R. TUNHEIM



United States District Judge

