UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Eric L. Jeffries,   Case No. C-1-01-680
    Plaintiff

vs

Prudential Insurance Company   **REPORT AND**
of America,   **RECOMMENDATION**
    Defendant   (Weber, J.; Hogan, M.J.)


      Plaintiff Eric L. Jeffrey brings this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq*. This matter is before the Court after oral argument held on October 21, 2003, on plaintiff's merits brief (Doc. 48), which the Court shall construe as a motion for summary judgment, defendant's memorandum in opposition thereto (Doc. 49), and plaintiff's reply memorandum (Doc. 51), and on defendant's motion for summary judgment (Doc. 47), plaintiff's memorandum in opposition (Doc. 50), and defendant's reply memorandum. (Doc. 52). For the reasons that follow, plaintiff's motion for summary judgment should be denied, and defendant's motion for summary judgment should be granted.

      A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

      In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created

by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## I.  BACKGROUND

Plaintiff Eric L. Jeffries began working for Provident Bank in 1992 as an assistant vice president in its corporate banking division. In addition to his salary, one of the benefits plaintiff received was participation in a long-term disability plan (the Plan) administered by defendant Prudential Insurance Company of America.

In July 1997, plaintiff was administered Hepatitis A and Hepatitis B vaccinations. Plaintiff's health deteriorated immediately following the vaccinations. He suffered muscle and joint pain, headaches, abdominal pain, disorientation, fatigue and "cognitive difficulties." His illness became progressively worse until he was forced to stop working for Provident Bank in September 1998. Plaintiff's complaint alleges, "the effects of [his] illness continue to disable him from performing his former Occupation." (Doc. 1 at 4).

In February 1999, plaintiff filed an initial claim for long-term disability benefits under the Plan. His claim was denied. Plaintiff pursued three levels of administrative appeals for nearly three years. When the time for a decision on the last appeal expired, he filed suit in this Court. Count I of the complaint seeks recovery of benefits

due to plaintiff under the Plan beginning March 1999 and "a determination by this Court that [plaintiff] is entitled to future benefits under the Plan" under 29 U.S.C. § 1132(a)(1)(B). (Doc. 1, ¶48). Count II of the complaint asserts a claim of breach of fiduciary duty by defendant under 29 U.S.C. § 1132(a)(3). (Doc. 1, ¶50).

Approximately three months after the complaint was filed, defendant determined that plaintiff was totally disabled and entitled to unpaid disability benefits under the terms of the Plan. It is undisputed that Prudential has paid plaintiff disability benefits for the period of February 1999 through the present in excess of $12,000.00 per month.

Following its determination that plaintiff was entitled to disability benefits, defendant moved for partial summary judgment arguing that plaintiff's claim for unpaid benefits was moot and his claim for breach of fiduciary duty was barred as a matter of law. (Doc. 23). The Court granted defendant's motion for partial summary judgment as to Count II of plaintiff's complaint, finding plaintiff's claim for a denial of benefits and for clarification of his rights to future benefits under § 1132(a)(1)(B) precludes an independent claim for breach of fiduciary duty under § 1132(a)(3). However, the Court denied the motion as to Count I of the complaint, finding an actual controversy exists as to plaintiff's rights to future benefits under ERISA. (Docs. 29, 32). The relief plaintiff seeks, a declaratory judgment clarifying his rights under the Plan, is specifically provided for in the statute. Section 502(a)(1)(B) of ERISA provides a civil cause of action for a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or *to clarify his rights to future benefits under the terms of the plan*." 29 U.S.C. § 1132(a)(1)(B)(emphasis added). *See also Camarda v. Pan American World Airways*, 956 F. Supp. 299 (E.D.N.Y. 1997), *aff'd per curiam*, 162 F.3d 1147 (2d Cir. 1998). In permitting Count I of plaintiff's complaint to go forward, the Court was persuaded by plaintiff's argument that discovery in this matter would likely show that defendant has administered the Plan in such a way that some disabled insureds, e.g., those with permanent injuries, receive long-term disability benefits without proof of loss every month in order to receive those benefits. *Id*. Plaintiff also contended that the Plan could be interpreted to provide future benefits. (Doc. 19 at 2). The undersigned stated:

> Plaintiff seeks discovery which he believes will show that other participants are not subject to the verification requirements for continuing benefits, effectively granting some beneficiaries something

> akin to permanent future benefits. Plaintiff argues that requiring him to submit verification of continuing eligibility on a monthly basis while omitting this requirement for others amounts to an arbitrary and capricious application of the Plan in his case. Defendant argues that the Plan simply does not provide for the permanent disability benefits sought by plaintiff. (Doc. 23 at 7-9). The interpretation and application of the Plan are at the heart of plaintiff's request for declaratory relief.

(Doc. 29, adopted by Judge Weber on Jan. 30, 2003, Doc. 32).

Discovery has been completed and the merits of plaintiff's declaratory judgment action are now before the Court.

## II. THE DECLARATORY RELIEF SOUGHT BY PLAINTIFF

Plaintiff seeks a declaration that he is entitled to long term disability benefits under the Plan through age 67. (Doc. 48 at 25). In support of his claim, plaintiff makes two arguments. First, he claims the administrative record shows he is permanently disabled. Second, he claims that some individuals insured under the Plan receive long term benefits without proof of loss every month and he was give no such consideration by defendant.

Initially, plaintiff asserts the administrative record demonstrates he is permanently disabled. Plaintiff argues, "The unrebutted reports and opinions of Drs. Hyde, Poser, Bastien, Waisbren, McClellan, Luggen, and Dunn, as well as the report of Ms. Baris, establish clearly that Mr. Jeffries' condition is degenerative and he is permanently disabled." (Doc. 48 at 25). Defendant argues that the administrative record does not establish that plaintiff is forever and incurably disabled. Defendant contends that the medical opinions upon which plaintiff relies are expressed largely in present tense from which no future predictions could be made. (Doc. 49 at 6-7).

The starting point in analyzing plaintiff's claim for declaratory relief is with the terms of the Plan itself. A primary purpose of ERISA is the enforcement of the plan terms. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 220 (2002). Federal common law principles of contract interpretation are used in construing the language of a plan governed by ERISA. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998)(en banc). Plan provisions are to be interpreted according to their

plain meaning, in an ordinary and popular sense. *Id*. "In applying this plain meaning analysis, we 'must give effect to the unambiguous terms of an ERISA plan.'" *Id*. (quoting from *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996)).

The terms of the Plan provide for "total disability" when Prudential determines the following three conditions are met:

(1) Due to sickness or accidental injury, you are not able to perform, for wage or profit, the material and substantial duties of your occupation.

(2) You are not working at any job for wage or profit.

(3) You are under the regular care of a Doctor.

(Plan at 10, Doc. 23, Exh. A, tab 3).

The Plan also requires "Proof of Loss." (Plan at 21). For Employee Long Term Disability Coverage, as in this case: "(a) Initial proof of loss must be furnished within 90 days after the end of the first month following the Elimination Period; and (b) Proof for each later month of continuing loss must be furnished within 90 days after the end of that month." (Plan at 21). The Plan states, "A claim will not be considered valid unless the proof is furnished within these time limits. However, it may not be reasonably possible to do so. In that case, the claim will still be considered valid if the proof is furnished as soon as reasonably possible." *Id*. The Plan also provides for "Physical Exam[s]" at Prudential's expense: "Prudential, at its own expense, has the right to examine the person whose loss is the basis of claim. Prudential may do this when and as often as is reasonable while the claim is pending." *Id*. Once a Plan participant satisfies these conditions, disability benefits are calculated by taking the participant's "Scheduled Benefit" and subtracting the "Offset Amount for that Calendar Month," such as Social Security disability benefit payments. (Plan at 4-5, 15-16).

Examining the plain language of the Plan in this case, the explicit provisions of the Plan do not provide for any type of "permanent" future or lump-sum benefits. Participants must have a sickness or injury preventing them from performing the substantial and material duties of their job, be under the care of a physician, and provide periodic proof of such to be eligible for continuing coverage under the Plan. All prospective payments are subject to these and the other conditions set forth above.

Since the plain terms of the Plan do not provide for permanent or lump-sum benefits and require periodic proof of disability, the Court is without the authority to rewrite the Plan to add the additional terms sought by plaintiff. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d at 557 (it is a basic principle of contract law that courts are not permitted to rewrite contracts by adding additional terms). Plaintiff has cited to no explicit terms of the Plan to the contrary, nor legal authority compelling a different result. Thus, even if the medical reports upon which plaintiff relies show he is "permanently" disabled[1], the Court is without the authority to grant plaintiff a declaration that he is entitled to permanent and future benefits in contravention of the Plan terms. Accordingly, based on the terms of the Plan itself, plaintiff is not entitled to the declaratory relief he seeks.

Nevertheless, plaintiff argues that Prudential's application of the Plan in effect confers something akin to permanent disability benefits to other Plan participants. (Doc. 48 at 25-26). Plaintiff contends that on the basis of the deposition testimony of Daniel Dougherty, a Director of defendant, and a decision-maker at each stage of plaintiff's appeal process, plaintiff is entitled to a declaration of future benefits by the Court. (Doc. 48 at 26).

While counsel for plaintiff cites only a brief excerpt from Mr. Dougherty's deposition in support of his contention, the Court shall quote the entire pertinent discussion for purposes of completeness. Counsel for plaintiff first inquired into the issue of "auto pay" for claims approved by Prudential. (Dougherty Depo. at 47). Mr. Dougherty testified that while he has heard of the term "auto pay," he has not heard the term used in connection with a long-term disability claim. (Dougherty Depo. at 47). The colloquy continues:

> Q. Oh really. Are there claims that have been approved and they're not subject to further review, they just get their disability check every month?
> A. No.
> Q. That doesn't exist?
> A. No.
> Q. So, if a guy's in a coma and has been there for seven years, he's got to prove he's disabled every month. Is that the case?

---

[1] In any event, the Court is not persuaded that the evidence cited by plaintiff conclusively shows he is "permanently" disabled to the age of 67 in this case.

6

A. In order to receive long-term disability benefits, there are the requirements to prove to disability.

Q. So in a situation where you have somebody in a coma, has been in a coma for ten years, has no likelihood of coming out of the coma, do you have them examined every month or have the attending physician's statement sent to the company every month?

A. We require periodic proof of disability. If you want a specific answer, no, we don't require an attending physician's statement every month, but we, certainly, do require periodic proof of disability.

Q. How periodic, in that situation, would you require proof of disability?

A. I can't recall that we have any such situation. But, at a minimum, we would require proof of disability, at least once every two years.

Q. Are there any claims you have on which it's a once every two years scenario?

A. Yes.

Q. Are there any claims you have where it's a longer period of time than that?

A. No.

*
*
*

Q. Are there claims where the claimant has been receiving benefits for a period equal to or greater than five years, where you still require monthly proof of disability?

A. There could be.

Q. Are there any that you can think of?

A. Yes.

Q. What types of illnesses do those individuals have that you can think of?

A. I can't think of any illnesses offhand. You know, and maybe what you're getting at is, we do require periodic proof of disability. If somebody has a condition. (Sic) Is that extremely well documented by medical, by objective medical evidence, such as the situation of somebody in a coma, or somebody who's lost limbs, and it's clear and evident that there's not a likelihood, but that the person is totally disabled, at present, and there is no likelihood of future improvement, then we would require periodic proof of disability, but we would only request it every couple of years. But there are many conditions where present total disability isn't clear or the opportunity for future recovery is based on improvement in the condition or advances in medical technology, where we would require more frequent proof of disability.

>Q. Even where the person, the hypothetical person has been receiving benefits continuously for five years or more?
>A. Yes.

(Dougherty Depo. at 47-51)(objections omitted).

Contrary to plaintiff's suggestion that he is entitled to a declaration of future benefits because "[s]uch benefits are provided to others but no consideration for this benefit was given to [him]," the deposition testimony of Mr. Dougherty does not support plaintiff's claim. The deposition testimony clearly shows some insureds with no likelihood of future improvement would still be required to submit periodic proof of disability "every couple of years." There is no evidence that claimants are granted disability benefits without proof of disability on a continuing basis. "Periodic" proof of disability plainly means that the issue of continuing disability is subject to verification at some point in time. When questioned at oral argument, both parties agreed that the decision as to the length of time covered by the term "periodic" is an issue for Plan administrators. Plaintiff appears to be complaining that he is forced to comply with the requirements of the Plan to submit evidence supporting his claim for disability on a monthly basis in order to continue receiving benefits while others may not be subject to the same requirements. Not only is the evidentiary basis for this claim lacking, the legal basis is lacking as well. Plaintiff has not cited, nor has the Court found, any legal authority supporting the proposition that a waiver of periodic proof of disability requirements for some participants, contrary to the plain terms of the Plan, mandates a waiver of such requirement for plaintiff. The terms of the Plan clearly provide that proof of disability be provided for any given month "within 90 days after the end of that month." (Plan at 21). The Court cannot read this provision out of the Plan, nor does the Court have the authority to arbitrarily set a "periodic" term in this particular case for plaintiff. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d at 557. Therefore, plaintiff is not entitled to a declaration that he is entitled to future benefits through age 67 based on defendant's administration of the Plan.[2]

---

[2] In his reply memorandum, plaintiff for the first time separates his request for declaratory relief into two parts: a declaration that he has been "totally disabled" for five years and a declaration that he is "totally disabled" and entitled to benefits to age 67. (Doc. 51 at 1-3). Aside from the fact that plaintiff has raised a new request for relief in his reply brief, a practice the Court does not condone, the declaration he seeks amounts to a request clarifying his right to *past* benefits, relief unavailable under ERISA. 29 U.S.C. § 1132(a)(1)(B)(ERISA provides for a cause of action "to clarify his rights to *future* benefits under the terms of the plan.") Nor is there

## III. THE ALTERNATIVE DECLARATIONS SOUGHT BY PLAINTIFF

Plaintiff seeks three alternative declarations in the event the Court determines he is not entitled to a declaration of a right to benefits through age 67. First, plaintiff seeks a declaration that the Policy does not provide discretion to defendant. Second, plaintiff seeks a declaration that the Policy and ERISA do not require "objective medical evidence." Third, plaintiff seeks a declaration that an illness that waxes and wanes may be totally disabling. (Doc. 48 at 27). At the oral argument of this matter, plaintiff clarified he wanted these additional declarations in the event this matter comes back to the Court. In other words, plaintiff wants this Court to issue these declarations in the event plaintiff's disability benefits are terminated at some future point in time.

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id*. at 114. If the plan vests discretionary authority in the plan administrator, the Court reviews the denial of benefits under an arbitrary and capricious standard of review. *Hunter v. Caliber System, Inc.*, 220 F.3d 702, 710 (6th Cir. 2000). "'The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Hunter*, 220 F.3d at 710 (6th Cir. 2000), quoting *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989).

With respect to the first alternative declaration, plaintiff essentially asks this Court to declare any future decisions with respect to his disability benefits be reviewed *de novo*. However, the instant case does not involve a denial of benefits, nor the construction of any particular terms of the Plan. *Firestone*, 489 U.S. at 114. Rather, based on plaintiff's theory of the case upon which the Court found an Article III case or controversy (see Doc. 29 at 5), this case involves defendant's application of the Plan to plaintiff vis-a-vis other claimants. As discussed above, plaintiff has

---

an actual controversy over whether plaintiff has been totally disabled since September 1998, when he initially applied, through the present. It is undisputed that plaintiff has been receiving monthly disability benefits under the Plan.

failed to establish that defendant has granted other claimants "permanent" disability benefits in the absence of periodic verification of disability and in contravention of the Plan terms. There is no present controversy over which the Court must determine the standard of review. To declare that any future decisions on plaintiff's disability benefits is subject to a *de novo* review would be tantamount to this Court issuing an advisory opinion. This Court is without authority to do so and, tellingly, plaintiff has been unable to cite any legal authority where a court has made such a declaration under circumstances similar to the case at hand.

Likewise, there is no present controversy involving the second and third alternative declarations. There is no need for the Court to determine at this juncture whether the Plan or ERISA requires "objective medical evidence" or whether a condition that waxes and wanes may be totally disabling. Plaintiff has in fact been found totally disabled under the terms of the Plan based on the evidence presented during the administrative proceedings. This Court is mindful of the statements made in its prior decision concerning information suggesting that plaintiff's entitlement to continuing benefits is at imminent risk of termination. (Doc. 29 at 5). Since that time, however, plaintiff has presented no evidence substantiating his concerns over the imminent termination of his benefits. *See Paciello v. UNUM Life Ins. Co.*, 188 F.R.D. 201, 204 (S.D.N.Y. 1999) ("Plaintiff's speculation that her benefits might be withdrawn in the future, and that she might then receive a defective denial of benefits letter, does not mean that she has a live case in controversy at this moment ."). Accordingly, he is not entitled to the requested alternative declarations.

## III. PLAINTIFF'S REQUEST FOR ATTORNEY FEES AND INTEREST

### A. Interest

Defendant does not dispute that interest is owed on past due benefits and states it will calculate and pay the interest owed. At the oral argument of this matter, plaintiff stated that the parties were attempting to resolve this issue and, in the event a resolution was not reached, would brief the issue for disposition by the Court at a later date. Therefore, the Court takes no position with regard to plaintiff's claim for interest.

### B. Attorney Fees

Title 29 U.S.C. § 1132(g) authorizes district courts to allow a reasonable attorney's fee and costs to either party in an ERISA action. 29 U.S.C. § 1132(g)(1). There is no statutory presumption for an award of attorney fees in ERISA cases. *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 939 (6th Cir. 1996). Nor should attorney's fees be awarded as a matter of course in ERISA cases. *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1302-03 (6th Cir. 1991). The district court is given broad discretion in awarding attorney's fees in an ERISA action under a five-factor test: 1) the degree of the opposing party's culpability or bad faith; 2) the opposing party's ability to satisfy an award of attorney's fees; 3) the deterrent effect of an award on other persons under similar circumstances; 4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and 5) the relative merits of the parties' positions. *Secretary of Dept. of Labor v. King,* 775 F.2d 666, 669 (6th Cir.1985)(the "*King*" factors). *See also Hoover v. Provident Life and Acc. Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002). "Because no single factor is determinative, the court must consider each factor before exercising its discretion." *Schwartz v. Gregori*, 160 F.3d 1116, 1118 (6th Cir. 1998), citing *Wells v. United States Steel*, 76 F.3d 731, 736 (6th Cir. 1996).

Plaintiff seeks attorney fees for work performed during both the administrative proceedings and in this Court. However, ERISA does *not* permit parties to recover attorney's fees for legal work performed during the administrative phase of a benefits proceeding. *Anderson v. Procter & Gamble Co.*, 220 F.3d 449, 456 (6th Cir. 2000). Plaintiff attempts to distinguish *Anderson*, which prohibits attorney fees for administrative ERISA work, arguing that the plaintiff in *Anderson* did not file a civil

action under § 1132(a) as in the instant case, but filed suit only to recover attorney fees for legal work performed during the administrative proceedings.

Plaintiff's attempt at distinguishing *Anderson* is unavailing.  The *Anderson* Court relied in part on the Ninth Circuit's decision in *Cann v. Carpenters' Pension Trust Fund for Northern California*, 989 F.2d 313 (9th Cir. 1993).  The *Cann* Court held that both the plain language and underlying Congressional purpose of ERISA militated against awarding legal expenses incurred during administrative proceedings prior to suit. *Id*. at 317. *Cann*, like the instant case, involved a civil action for attorney fees incurred during *both* the administrative process and in district court.  The *Cann* Court parsed out the fees related to the litigation only, and denied fees for the administrative phase of the claims process. *Id*. at 314-15.  So although the plaintiff in *Anderson* did not file an action under section 1132(a) as in the instant case, the *Anderson* Court's reliance on *Cann* strongly suggests that plaintiff's distinction is not determinative in this case.

Plaintiff also argues that the *Anderson* Court's interpretation of *Sullivan v. Hudson*, 490 U.S. 877 (1989), supports his position that fees for administrative work are recoverable in this case:

> In *Anderson* (the case defendant relies upon), the Sixth Circuit interpreted the Supreme Court's statement in *Sullivan* (that "administrative proceedings may be so intimately connected with judicial proceedings as to be considered part of [a] civil action for purposes of a fee award") to mean that "fees for administrative proceedings under 29 U.S.C. § 1132(g) should be recoverable only when the final judgment (or enforcement thereof) in the prevailing party's suit depends on the administrative proceedings for which fees are being claimed." *Id*. at 453-454. Clearly, that is the case here.

(Plaintiff's reply brief, Doc. 51 at 9-10).

Plaintiff's incomplete citation to *Anderson* is unpersuasive. *Anderson* explicitly notes that the administrative proceedings for which attorney fees were sought in *Sullivan* occurred *after* suit was filed in Court, not before as in the instant case.  In *Sullivan*, the administrative proceedings in question were conducted pursuant to a court ordered remand of a Social Security case.  The *Anderson* Court distinguished *Sullivan* on the basis of the difference in the governing statutes as well as the policy

rationale for allowing the prevailing party in *Sullivan* to recover attorneys' fees for administrative proceedings:

> In *Sullivan*, the Court found that, in light of the "mandatory nature of the administrative proceedings" and their "close relation in law and fact to the issues before the District Court on judicial review," denying fees for administrative proceedings *subsequent* to litigation would create an incentive for "attorneys to abandon claimants after judicial remand," a result that "runs directly counter to long established ethical canons of the legal profession." *Id*. at 890, 109 S.Ct. 2248. Denying fees for pre-litigation exhaustion of administrative remedies would not present any such difficulty.

*Anderson*, 220 F.3d at 454 (emphasis added). No such policy concerns are implicated in the instant case. Moreover, plaintiff has failed to cite to any case within the Sixth Circuit post-*Anderson* where attorney fees have been awarded for administrative proceedings in an ERISA case. Accordingly, this Court declines to do so in this case.

The Court next considers the five *King* factors outlined above. As to the first factor, plaintiff argues that defendant engaged in a systematic pattern of bad faith during the administrative proceedings by ignoring the medical evidence, violating ERISA regulations, invading plaintiff's privacy, and only granting long term disability benefits after this lawsuit was filed on the eve of scheduled depositions. (Doc. 48 at 20-22). Plaintiff lists several actions allegedly taken by defendant during the Claims review and Appeal process that purportedly show plaintiff was treated in a bad faith manner. (Doc. 48 at 21-22). Defendant contends that plaintiff has received all the relief to which he is entitled, i.e., a grant of long term disability benefits, and that plaintiff has failed to provide any basis for a finding of bad faith during this litigation. (Doc. 49 at 11-12).

Plaintiff's evidence of bad faith focuses on the alleged delay and processing of plaintiff's claim throughout the administrative process. Defendant suggests that plaintiff must show bad faith during the litigation to be awarded fees. Whether the issue of bad faith should be examined from the point of view of bad faith during the litigation or during the administrative process appears to be an issue neither the Sixth Circuit nor this Court has previously addressed. Nevertheless, the Sixth Circuit has examined an analogous situation where an attorney sought fees for services performed during an appeal. In *Schwartz v. Gregori,* 160 F.3d 1116 (6th Cir. 1998), the Sixth

Circuit upheld the district court's denial of a former employee's application for appellate attorney fees.  The former employee argued that the court should examine the issue of bad faith or culpability of the former employer in the underlying lawsuit, while the former employer argued the court should review whether its appeal was pursued in bad faith.  The Court of Appeals stated that "[l]ogic dictates the answer to this question" and  held, "[W]here an appellee seeks attorney's fees and costs for services performed in connection with defending an appeal, we review whether the appellant pursued this appeal in bad faith and not whether the appellant's conduct which resulted in litigation warrants a finding of bad faith or culpability." *Id.* at 1120.

By the same token, logic dictates that the question of Prudential's alleged bad faith in this case must be examined by looking at its conduct in this litigation, and not during the underlying administrative process.  This position is further supported by the fact that an award of attorney fees may be made in connection with a lawsuit, but not for the underlying administrative proceedings.

Turning to the issue of bad faith during the litigation, plaintiff presented no evidence in his briefs to support a finding of bad faith during the litigation.  At oral argument, plaintiff cited to the following as evidence of defendant's bad faith: defendant's answer to the complaint denying plaintiff was disabled; defendant's answers to interrogatories denying plaintiff was disabled; and then defendant's about-face decision in December 2001 finding plaintiff disabled, made only after this lawsuit was filed and based on the same factual record as the previous denials.  Plaintiff contends defendant realized it had a weak record for purposes of judicial review and was motivated to grant benefits now, with an eye towards terminating benefits after the conclusion of this litigation.  Plaintiff also cites to defendant's award letter requesting further documentation verifying continuing disability and defendant's failure to file the administrative record in this matter as evidence of bad faith.

At oral argument, counsel for defendant argued that the third appeal process was not yet complete when plaintiff filed this lawsuit.  The filing of the lawsuit allegedly "closed" the appeal process while plaintiff's claim was reviewed by defendant's litigation department.  Thereafter, the appeals committee again convened and reversed the previous denial decision. Defendant contends that the multiple layers of appeal pursued by plaintiff shows not bad faith, but a process intended to protect beneficiaries, especially those without counsel, and one in which earlier errors can be corrected without litigation.

Bad faith normally connotes an ulterior motive or sinister purpose. *See McPherson v. Employees' Pension Plan of American Re-Insurance Co., Inc.*, 33 F.3d 253, 256 (3rd Cir. 1994). *See also Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 941 (6th Cir. 1996)(recognizing that bad faith in the context of ERISA "is subjective and requires proof of motives") (Wiseman, J., dissenting). Culpable conduct is "blameable" and "censurable." *McPherson*, 33 F.3d at 257. To be culpable, conduct must involve "something more than simple negligence" and be "reprehensible or wrong," however it need not involve "malice or a guilty purpose." *Id*. Culpability may be based on violation of a legal duty. *Id*.

The most common application of the first *King* factor appears to occur when the reviewing court overturns the administrator's decision denying benefits and in doing so finds some element of bad faith on the part of the administrator in denying benefits in the first place. *See, e.g., Hoover,* 290 F.3d at 809. Here, however, plaintiff was granted disability benefits by the defendant shortly after this suit was initiated. While the timing of defendant's decision to grant benefits three months after the filing of the lawsuit may cast some suspicion on the part of defendant, the Court can find no evidence of an ulterior motive or sinister conduct on the part of defendant in this respect or that such degree of culpability was "high." *Hoover*, 290 F.3d at 809. Although the pursuit of a groundless or meritless position can support a finding of culpability, *McPherson*, 33 F.3d at 256-58, defendant ultimately did not pursue a groundless or meritless position in this matter. Rather, it reversed its decision denying benefits three months after this lawsuit was initiated. A finding of bad faith based on a Plan administrator's voluntary decision to reverse an earlier denial of benefits after litigation is filed would appear to discourage administrators from making decisions favorable to claimants if only to be faced with a bad faith claim in the process. While the parties dispute the reason for the reversal of the decision denying benefits, there is simply insufficient evidence upon which the Court can make a finding of bad faith or a high degree of culpability on the part of defendant in this litigation. It is also worth noting defendant successfully defended against plaintiff's claims of a breach of fiduciary duty and for declaratory relief. Therefore, the defense of these claims cannot be found to have been pursued in bad faith. Accordingly, the first *King* factor weighs in favor of defendant.

Even if the Court were to examine plaintiff's evidence concerning defendant's handling of plaintiff's disability claim, the problem in this case is that the parties never actually litigated the merits of plaintiff's claim for past disability benefits. Three months after this lawsuit was filed, plaintiff was granted full disability benefits.

15

Therefore, the propriety of defendant's claims decision and appeals has never been adjudicated. In addition, while plaintiff makes numerous allegations of bad faith concerning the processing and methods used to evaluate his disability claim, several are wholly unsupported by any evidence. For example, while plaintiff argues defendant's claims and appeals procedures "violated ERISA regulations" (Doc. 48 at 21), he fails to present any evidence or legal authority in support of this claim. Plaintiff also claims defendant "colluded with another insurer for the purpose of joining resources to deny" his claim (Doc. 48 at 22), but presents no evidence substantiating this claim.

The thrust of plaintiff's argument concerns the length of time encompassing the underlying administrative process. Plaintiff pursued his administrative remedies for three years, then filed this lawsuit before defendant found him disabled. Plaintiff contends the medical evidence submitted during administrative proceedings was same as when he was ultimately found "totally disabled" by defendant. The Court is not unmindful that the administrative process has been a lengthy and undoubtedly frustrating one for plaintiff. However, plaintiff has presented no legal authority showing that the delay resulting from the pursuit of administrative remedies constitutes bad faith. The administrative appeals process "enables plan fiduciaries to 'efficiently manage their funds; *correct their errors*; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions.'" *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 454 (6th Cir. 1991) (per curiam) (emphasis added), quoting *Makar v. Health Care Corp. of Mid-Atlantic*, 872 F.2d 80, 83 (4th Cir. 1989). That process ultimately ended in a finding favorable to plaintiff. Accordingly, the Court does not find evidence that defendant acted in bad faith in this matter. This factor weighs against awarding attorney's fees to plaintiff.

To the extent plaintiff argues that a finding of bad faith is not necessarily required for an award of attorney fees (Doc. 48 at 20), courts awarding attorney fees in such circumstances have nevertheless found a "high" degree of culpability on the part of the defendant. *See Hoover*, 290 F.3d at 810 (although district court found no bad faith on part of defendant, it concluded defendant's culpability was high); *Adams v. Prudential Ins. Co. of America*, 280 F. Supp.2d 731, 742 (N.D. Ohio 2003)(no finding of bad faith, but attorney fees awarded where defendant's culpability high as its decision to terminate beneficiary's long-term disability benefits was arbitrary and capricious). Because this Court has made no determination on the merits of plaintiff's claim for past disability benefits, there can be no finding of culpability on the part of defendant in this matter.

16

With regard to the second *King* factor, defendant admits that it is able to satisfy an award of fees. This factor alone, however, is not dispositive. *See, e.g., Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 557-58 (6th Cir. 1987) ("[a]lthough Firestone clearly possesses the ability to pay, this factor alone should not be dispositive when examination of all other relevant factors indicates that fees should not be awarded).

Third, the Court does not consider that an award of fees would act as a deterrent to other employers under similar circumstances given that defendant did not necessarily act with bad faith or high culpability. *See, e.g., Foltice*, 98 F.3d at 937 (the "deterrent effect . . . is likely to have more significance in a case where the defendant is highly culpable. . . ."). "Honest mistakes are bound to happen from time to time, and fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing." *Id*.

Fourth, plaintiff concedes he did not seek to confer a common benefit on any other participants of the ERISA Plan. Nor did this lawsuit seek to resolve significant ERISA legal questions.

Fifth, while plaintiff obtained an award of past due disability benefits after this lawsuit was filed, the Court's decisions in this case reveal that plaintiff's litigation positions pursued thereafter were ultimately without merit. The Court dismissed plaintiff's claim for breach of fiduciary duty (Doc. 32) and recommends that plaintiff's claims for declaratory relief be denied as well. Therefore, this factor weighs against attorney fees for plaintiff.

In sum, the only *King* factor favoring plaintiff's request for attorney fees in this matter is defendant's ability to pay a fee award. This factor, in itself, is insufficient to grant an award of fees in this matter. *Firestone*, 810 F.2d at 557-58. Accordingly, plaintiff's request for attorney fees should be denied.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's motion for summary judgment be DENIED.

2. Defendant's motion for summary judgment be GRANTED.

3. This matter be terminated on the docket of the Court.


Date:   12/04/2003                   s/Timothy  S.  Hogan
               Timothy S. Hogan
               United  States  Magistrate Judge

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

J:\KLL\hogan cases\01-680r&r2.wpd