IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) | Case No. C-1-01-680 |
| | : | |
| Plaintiff, | ) | Judge Weber |
| | : | |
| vs. | ) | |
| | : | |
| PRUDENTIAL INSURANCE CO., | ) | **PLAINTIFF'S OBJECTIONS TO** |
| | : | **MAGISTRATE'S REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

The plaintiff, by and through counsel, hereby files objections to and appeals the Report and Recommendation issued by the Magistrate Judge on December 4, 2003. (*Doc. 57*).   For the reasons set forth herein, this Court should not adopt the Magistrate's Report And Recommendation and should enter judgment in favor of the plaintiff, Eric L. Jeffries, on the following issues: (i) the plaintiff is entitled to a declaration that he is entitled to long term disability benefits through age 67; (ii) the plaintiff is entitled to a declaration that no "objective medical evidence" is required to be entitled to benefits; and (iii) the plaintiff is entitled to an award or shift of attorney fees and costs incurred during the Administrative Review stage of the dispute, the initial stage of the litigation, and the second stage of the litigation of this action.

Respectfully submitted,

Dated:  December 15, 2003

/s Michael A. Roberts_____
Michael A. Roberts, Esq.
GRAYDON HEAD & RITCHEY LLP
511 Walnut Street, Suite 1900
Cincinnati, Ohio 45202
(513) 629-2799
(513) 651-3836 – fax
email:mroberts@graydon.com
*Trial Counsel For Plaintiff*

1

### MEMORANDUM IN SUPPORT

Contrary to the conclusions of the Magistrate Judge's Report and Recommendation (*Doc. 57*), the plaintiff is entitled to the following relief in this ERISA action:

    (i)    a declaration that he is entitled to benefits through age 67;

    (ii)    a declaration that "objective medical evidence" of disability is not required for benefits to issue; and

    (iii)    an award of attorney fees incurred for the three distinct phases of this dispute.

Since February 1999, when Mr. Jeffries first filed his Claim for benefits, the medical evidence of "total disability" has been overwhelming. There has been no evidence to the contrary. Despite this voluminous and one-sided evidence, the defendant in bad faith refused to pay any benefits to Mr. Jeffries: (i) it denied his initial Claim in June 1999; (ii) it denied his First Appeal in February 2000; (iii) it denied his Second Appeal in October 2000; and, (iv) rather than examining Mr. Jeffries' Third Appeal, defendant simply "closed" Mr. Jeffries' Claim and Appeal altogether on September 25, 2001.

On October 3, 2001, eight days after defendant closed Mr. Jeffries' Claim and three days after the expiration of the time defendant had to resolve the Third Appeal Mr. Jeffries had submitted on August 1, 2001, Mr. Jeffries brought this action.

In its ensuing Answer, the defendant in bad faith denied that Mr. Jeffries was "totally disabled" and also denied that he was "totally disabled" in its mid-December 2001 Interrogatory responses. No evidence supported these litigation positions.

But on January 4, 2002, three months after Mr. Jeffries brought this suit, defendant purportedly re-opened Mr. Jeffries' Third Appeal and, based on the same information it had

available to it when it repeatedly denied the Claim and successive Appeals, the defendant retroactively approved Mr. Jeffries' Claim, proclaimed that it had now concluded that Mr. Jeffries was indeed "totally disabled" and had been totally disabled since September 1998. One month later, defendant issued a check for the previously withheld benefits.

It is obvious that defendant's January 2002 about-face on the issue of total disability was a trial tactic only. Defendant's trial strategy and delinquent payment of benefits, however, does not preclude the Court from: (i) appropriately declaring that the Administrative Record establishes that Mr. Jeffries is entitled to benefits through age 67; (ii) declaring that the Policy does not require the existence of "objective medical evidence" for benefits to be payable to avoid future disputes on this issue; and (iii) awarding Mr. Jeffries his attorney fees and costs for the Administrative Review, the litigation up to the time of benefit payment, and the litigation since February 2002 when benefits were totally paid.

I.    _Factual Summary And Administrative Record._[1]

    A.    **Mr. Jeffries' Occupation and The Policy.**

The plaintiff, Eric L. Jeffries, formerly worked for the Provident Bank as a merchant banker. As a Provident Bank employee, he became a participant in, _inter alia_, an employee welfare benefit plan which provided participants with long-term disability insurance coverage provided through the defendant, Prudential Insurance Company of America, under group policy number 37212 (the "Policy"). (_See_, _Policy at AR 00064 - 00088_). The Policy is an "own-

---

[1]    A more complete review of the factual background underlying plaintiff's illness and claim is set forth in his merits brief (_Doc. 48_), which is incorporated here by reference.

occupation" Policy[2]. Specifically, the Policy states that Mr. Jeffries will be considered "totally disabled" if "due to sickness . . . [he is] not able to perform for wage or profit the material and substantial duties of [his] occupation." (*AR 00074*).

Mr. Jeffries' responsibilities in his Occupation included: (i) overall responsibility for the Structured Finance activities and loan portfolio; (ii) establishment and implementation of Structured Finance objectives, policies and practice; (iii) provision of guidance to officers engaged in lending and portfolio analysis; (iv) oversight of unusually large or complex loans; and (v) evaluation of the loan portfolio and analysis of any developing trends. (*AR 02176*). In his final year with Provident (at age 37), Mr. Jeffries earned over $450,000 and received additional compensation in the form of 50,000 Provident Bank stock options. (*AR 01993-02000*).

**B.**    **The Administrative Record's Overwhelming Evidence of Disability Which Defendant Disregarded From February 1999 Until January 2002 During The Claim Review, The First Appeal, The Second Appeal, The <u>Third Appeal, And The Initial Stages Of This Litigation</u>.**

In 1997, Mr. Jeffries received the hepatitis A and B vaccinations. (*AR 01993-02000*). Immediately thereafter, Mr. Jeffries complained to his physician of failing health, including, *inter alia*, severe muscle pain, joint pain, headaches, abdominal pain, cognitive difficulties, disorientation, and fatigue. *Id.* This caused Mr. Jeffries' physician to contact the manufacturer of the vaccine who advised that Mr. Jeffries was likely suffering from an allergic reaction to the vaccinations or "serum sickness." (*AR 02002-02006*).

---

[2]    Mr. Jeffries' Occupation at the time of his disability was corporate banker and Managing Director of the Structured Finance Division of Provident Capital Corporation (the "Occupation"). The evidence of the nature of Mr. Jeffries' Occupation includes: his Affidavits (*AR 01993-02000*); his Job Description (*AR 02176*); and the Affidavits of Mr. Jeffries' boss of 6 years, K. Rodger Davis, the Executive Vice President of Provident Bank and its second highest ranking officer. (*AR 02178-02184*)

Over the next several months, Mr. Jeffries' illness progressively worsened.  In addition, to severe muscle and joint pain, Mr. Jeffries' cognitive functioning deteriorated so significantly that he had difficulty concentrating, processing information, thinking quickly, making decisions, performing simple calculations, understanding what he read, and verbally describing the steps involved in any given procedure.  Mr. Jeffries' illness "totally disabled" him from continuing his Occupation.

In February 1999, after his employer-provided short term disability benefits ran out, Mr. Jeffries filed a claim with the defendant for long-term disability benefits (the "Claim").

1.    **Evidence of Disability.**

Since February 1999, when Mr. Jeffries first filed his Claim for benefits, the Administrative Record has contained an overwhelming amount of medical opinions and evidence of board certified physicians who have been actively involved in Mr. Jeffries' care who agree and testify that Mr. Jeffries suffers from a debilitating illness likely related to some autoimmune disorder.  And the only medical examination obtained by defendant confirmed (in January 2000, during the period of the First Appeal) that Mr. Jeffries is totally disabled.

Despite this overwhelming and one-sided evidence, the defendant repeatedly refused to recognize Mr. Jeffries' right to receive benefits -- until three months after this suit was filed.

Mr. Jeffries three primary physicians, Drs. Michael McClellan, Michael Luggen, and Corwin Dunn, authored sworn statements stating that Mr. Jeffries' illness disables him from continuing in his Occupation.  (*Dunn: AR 02277- 02282; Luggen: AR 02334 – 02348; and McClellan: AR 02372 - 02382*).  And three experts who actually saw and offered treatment to Mr. Jeffries confirmed in their respective reports and/or affidavits that Mr. Jeffries is disabled from

continuing in his occupation: Dr. Byron Hyde [3] (*AR 02284 – 02328*); Dr. Charles Poser[4] (*AR 02388 – 02391*); and Dr. Burton Waisbren (*AR 02397 – 02448*).  And a neuropsychologist who examined Mr. Jeffries, Dr. Sheila Bastien, further confirmed that Mr. Jeffries is disabled.  (*AR 02215 – AR 2272*).

According to Dr. Poser: "Mr. Jeffries gives . . . the classical history of chronic fatigue syndrome (CFS) [and] fulfills [Dr. Poser 's] own diagnostic criteria for CFS . . . the temporal relationship . . . [of the illness] to the vaccination . . . is such as to strongly suggest a causal relationship."  Dr. Poser gives Mr. Jeffries a "guarded" diagnosis with the "prospects for recovery and return to gainful employment [as] quite dismal." *(AR 02399)*.

In his Final Report and Summary Dr. Hyde states that: "The . . . immunization Mr. Jeffries received . . . caused Mr. Jeffries to suffer a downward spiral of his health which led to his _permanent_ departure from work in September 1998." (*AR 02328*).  It is Dr. Hyde's opinion that:  "Mr. Jeffries' illness totally disabled him from returning to his previous employment, or intellectual work of any kind.  Furthermore, it is my opinion that this total disability has persisted from at least the time Mr. Jeffries ceased employment in September 1998, and will continue into the foreseeable future." *Id.*

Dr. Bastien performed a neuropsychological examination of Mr. Jeffries.  According to Dr. Sheila Bastien: "Mr. Jeffries could not work in any job in the national economy for which he has reasonable training and experience and certainly could not work in his previous occupation

---

[3]    Dr. Hyde is an internationally recognized expert and author of a book entitled The Clinical and Scientific Basis of Myalgic Encephalomyelitis Chronic Fatigue Syndrome.

[4]    Since 1996, Dr. Poser has served as a visiting professor of neurology at Harvard Medical School.  Dr. Poser has published approximately 240 articles in scientific journals, a number of abstracts, 85 chapters in reviews, and five books.

. . . ." *(AR 02266)*. Dr. Bastien concluded that Mr. Jeffries' test results indicate that: *"all findings make the prognosis poor for any work and impossible for fast-paced high level intellectual functioning. At this point he could not even function at a simple occupation." (AR 02265)*.

As mentioned, defendant secured an "independent medical evaluation" from Dr. Curran who confirmed that Mr. Jeffries suffers from an illness which Dr. Curran termed "acquired autoimmunity." (*AR 02166 – 02170*).

**2.    Defendant's Bad Faith Denial of Mr. Jeffries' Claim, Appeals and Suit.**

In February 1999, after his employer paid short term disability benefits expired, Mr. Jeffries presented defendant with his claim for long-term disability benefits (the "Claim"). In support of his Claim, Mr. Jeffries presented defendant with an Attending Physician's Statement completed by Dr. Luggen and certifying that Mr. Jeffries was disabled (*AR 00124 – AR 00125*). In addition, the defendant acquired all of Mr. Jeffries' medical records and the above referenced reports and opinions.

Despite the clear record of disability, on June 1, 1999 the defendant denied Mr. Jeffries' Claim.  As required by ERISA, Mr. Jeffries presented defendant with his First Appeal on November 12, 1999. (*AR 00095 - 00232*).

During the First Appeal stage, as it had done earlier and would continue to do, the defendant again had secret surveillance performed.  And at this stage, the defendant also had Mr. Jeffries' file reviewed by Dr. Curran. (*AR02166-02174*).  During this stage, the defendant also entered into a dialogue with Mr. Jeffries' other disability insurer, Disability Management Services ("DMS"). (*AR 00020*).  Defendant and DMS agreed to exchange information and jointly

retained a secret surveillance company to investigate Mr. Jeffries. (*Id.; and compare AR 02512 - 02525 with 02527 - 02540*).

Defendant denied the First Appeal in February 2000. (*AR 00234 – AR 00237*). Mr. Jeffries filed a Second Appeal on June 2, 2000. ( *AR 00042 – 00302 and AR 00411 – 00523*). Defendant denied the Second Appeal on October 30, 2000, without analyzing any of the information submitted. (*AR 02163-02164*)[5]. And as it had repeatedly done before, the defendant again applied the wrong definition for "totally disabled."

On August 1, 2001, Mr. Jeffries presented defendant with his Third Appeal. ( *AR 01917 - 02618*). In support, Mr. Jeffries presented defendant with an Appendix containing 59 separate supporting documents, including reports of the physicians who had treated Mr. Jeffries for his thyroid cancer. (*AR 02350 - 02367*). According to its phone log, before October 1, 2001, defendant essentially again did nothing on Mr. Jeffries' Third Appeal. (*AR 00025 – 00026*). There also is no SOAP note suggesting that defendant directed any physician to examine the medical evidence submitted with the Third Appeal. (*AR 00408 – 00410*). In fact, on September 25, 2001, defendant "closed" Mr. Jeffries' Claim and Third Appeal without notifying Mr. Jeffries of this decision. (*AR 00410, 02620, and 02671*).

Because ERISA regulations require an insurer to decide an appeal in 60 days (*See, 29 C.F.R. Section 2560.503-1 (h)(1)(I)*), Mr. Jeffries had requested a decision on his August 1, 2001, Third Appeal by October 1, 2001. (*AR 00387; 00029*). After the 60 days expired without any

---

[5]     Despite defendant's policy of documenting in its phone log all material conversations it has regarding a claim file, there are NO phone calls or other communications documented in the phone log for the entire period of the Second Appeal. (AR 00024 – 00025). And there is no SOAP note from the period of the Second Appeal. (AR 00407 – 00409).

decision (or analysis) and eight days after the Claim and Third Appeal were closed by defendant, Mr. Jeffries brought this action.

At that time, despite the overwhelming medical evidence of disability, the defendant had closed the Claim without paying even $1 to Mr. Jeffries. Mr. Jeffries' Claim and three appeals consumed 2 years 8 months and cost Mr. Jeffries a tremendous sum in attorney fees. At no point during that process did any of defendant's in-house or other physicians personally examine Mr. Jeffries. And at no point did anyone representing the defendant ever speak to one of Mr. Jeffries' physicians. And, *amazingly,* it appears from the phone logs and SOAP notes for June 2000 to October 2001, that defendant made no effort whatsoever to evaluate any evidence offered by Mr. Jeffries in his Second or Third Appeal.

### 3.    Bad Faith During First Stages of Suit.

In December 2002, when the defendant answered the Complaint and Mr. Jeffries' discovery requests, the defendant in bad faith (given the medical information in the record) continued to improperly claim that Mr. Jeffries was not disabled. (*See, Doc. 4, Answer, ¶19 and defendant's December 12, 2001, Response To Interrogatory No. 4*).

On January 4, 2002, two weeks after it served its discovery responses on Mr. Jeffries (and just days before depositions were agreed to commence), the defendant finally conceded that Mr. Jeffries was and had been "totally disabled" within the meaning of the policy for the entire period of September 1998 to January 2002. (*AR 02621, 02706 – 02707*).[6] Between October 3, 2001,

---

[6]    Since January 4, 2002, through its monthly payment of benefits, the defendant has repeatedly affirmed that Mr. Jeffries is and has been disabled within the meaning of the policy.

when Mr. Jeffries filed this suit, and January 4, 2002, defendant performed no analysis of Mr.

Jeffries' medical information and received no new medical information.

In denying defendant's request for partial summary judgment, the Magistrate Judge

accurately found that defendant's late about-face and decision to pay benefits, in light of the

history of the claim and appeals administration suggested that Mr. Jeffries:

> "has made a sufficient showing of threatened injury attributable to
> defendant which is likely to be remedied by a declaratory judgment . . . it
> has taken [Mr. Jeffries] nearly three years to obtain a decision from
> defendant granting him long-term disability benefits despite substantial
> evidence showing that [Mr. Jeffries] is disabled.  The grant of benefits
> came only after plaintiff filed the lawsuit in the instant case .  [And] it
> appears the decision allowing disability was equivocal and subject to the
> submission of further evidence substantiating disability.  Defendant has
> also indicated that the further documentation verifying continuing
> disability will be requested shortly.   In view of the history of [Mr.
> Jeffries'] claim and appeals, this information suggests that plaintiff's
> entitlement to continuing benefits is at imminent risk of termination."
> (Doc. 29).

On February 6, 2002, the defendant finally issued benefits to Mr. Jeffries for the period

March 27, 1999, through January 31, 2002, which had been improperly withheld.  (*AR 02743;*

*02709 - 02710*).  Without any further analysis or reservation of rights, the defendant has paid

benefits to Mr. Jeffries for February 2002 to December 31, 2003.  (*AR 02802 – 02832).*

**II.**    *The Declaratory Relief.*

Mr. Jeffries' Complaint requests, *inter alia*, a declaration clarifying his right to long term

disability benefits and his rights under the Plan into the future. (*See,* Complaint, Doc. 1, ¶ 48).

Earlier in this action, the Magistrate Judge correctly determined that "Section 502(a)(1)(B) of

ERISA provides a civil cause of action for a plan participant to . . . enforce his rights under the

terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C.

§1132(a)(1)(B)." (*Doc. 29*).  ERISA relief can be "administered through a declaratory judgment of entitlement to benefits or any injunction against a plan administrator's improper refusal to pay benefits."  ***Pilot Life Ins. Co. v. Dedeaux***,  481 U.S. 41, 53 (1987).  ERISA explicitly provides for the relief Mr. Jeffries seeks.  (*Doc. 29, p. 4*).  Here, given the substantial dispute between the parties on a number of issues, declaratory relief is appropriate to safeguard against needless future disputes and litigation.   But the Magistrate Judge incorrectly refused to provide declaratory relief.

Based on the administrative record, ERISA (29 U.S.C. § 1132(a)(1)(B)), and the additional sworn testimony developed in this action, Mr. Jeffries is entitled to the declaration that he is entitled to long term disability benefits under the Policy through age 67.  Should Mr. Jeffries not be granted that relief, he is entitled to a declaration that the Plan does not require "objective medical evidence" before a Plan participant may receive benefits.

**A.**    **Declaration of Benefits to Age 67.**

Based on the administrative record, ERISA (29 U.S.C. § 1132(a)(1)(B)), and the additional sworn testimony developed in this action, Mr. Jeffries is entitled to the declaration that he is entitled to long term disability benefits under the Policy through age 67.

The defendant has conceded that Mr. Jeffries has been continuously disabled for the entire 5 plus year period of September 1998 to December 2003. Defendant came to this conclusion on the basis of the Administrative Record. And that same Administrative Record (with its voluminous and one-sided evidence of disability) establishes that Mr. Jeffries is entitled to benefits through age 67.  Moreover, defendant has administered the Plan in such a way that some disable insureds receive long-term disability benefits without providing

defendant with monthly proof of loss.  But Mr. Jeffries' Claim was given no such consideration.

(*Dougherty Depo., Volume II, pp. 49-53*).

On the basis of Mr. Dougherty's testimony, Mr. Jeffries is entitled to a declaration of

Daniel Dougherty, a Director of defendant, and a decisionmaker at each stage of Mr.

Jeffries' claim and appeal process, testified that:

> Q:    "[By plaintiff's counsel] Are there claims where the claimant has been
> receiving benefits for a period equal to or greater than five years, where
> you still require monthly proof of disability?
>
> A:    [Mr. Dougherty] There could be . . . if somebody has a condition (where)
> it's clear and evident that there's not a likelihood, but that the person is
> totally disabled, at present, and there is no likelihood of future
> improvement, then we would require periodic proof of disability, <u>but we
> would only request it every couple of years.</u>" (*Dougherty Depo. Volume II,
> pp. 49-50*).

And in Mr. Jeffries' case no consideration was given to the fact that he had been disabled for

years and his doctors' unrebutted reports established that his illness was permanent:

> Q:    "So, no consideration was given to the fact that his doctors suggested it
> would be permanent.  Is that correct?
>
> A:    It wasn't relevant to the determination." (*Id., pp. 53*).

On the basis of Mr. Dougherty's testimony, Mr. Jeffries is entitled to a declaration of

future benefits by the Court.  Such benefits are provided to others but no consideration for this

benefit was given to Mr. Jeffries.  And the Administrative Record on this point indisputably

shows permanent disability.  For that reason, the Magistrate Judge incorrectly refused to declare

Mr. Jeffries entitled to benefits through age 67.  Because the Administrative Record

overwhelmingly shows that Mr. Jeffries' disability is one that will last for the balance of his

working life (age 67), he is entitled to a Declaration that he is entitled to benefits until such time.

On the basis of Mr. Dougherty's testimony, it is clear that Mr. Jeffries can be entitled to benefits without continuing interaction with the defendant. Such benefits are provided to others who paid premiums for the Policy, but no consideration for this benefit was given to Mr. Jeffries. And the Administrative Record on this point indisputably shows permanent disability.

**B.     Alternative Declaration – The Plan Does Not Require "Objective" Medical Evidence.**

Should this Court not declare that Mr. Jeffries is entitled to benefits under the Policy to age 67, Mr. Jeffries is entitled to an alternative declaration to clarify an existing dispute. Specifically, plaintiff seeks a declaration determining that neither the Policy nor ERISA require that there be "objective medical evidence" for a participant to be entitled to benefits. This declaration is necessary because each time that the defendant denied the Claim and each Appeal, it stated that a denial was appropriate since there was "no objective medical evidence" of Total Disability. This assertion was totally incorrect but nonetheless immaterial. Despite Prudential's numerous "Exceptions" and qualifications to coverage, which are set forth at pages 10-14 of the Policy and in the Claim Rules (pages 21 and 22 of the Policy), the Policy does not require the existence of "objective medical evidence" and the asserted lack of "objective medical evidence" cannot be a proper basis for denial of the Claim. The Magistrate Judge improperly refused to enter this declaration, which would help avoid future litigation.

A plain reading of the Policy evidences that it does not require that a claimant provide defendant with "objective medical evidence" before an award of benefits is proper. When asked to identify the terms of the Policy that it relies on for arguing that "objective medical

evidence" must exist, defendant refuses to answer the question.  (*AR 01508 – 01514, 01524 – 01525, 01528 – 01532, 01535 – 01537, 01543*).

Neither the Policy nor ERISA require that there be "objective medical evidence" for a claimant to be entitled to benefits. (*See, e.g., **Mitchell v. Eastman Kodak Co** ., 113 F.3d 433 (3rd Cir. 1997*)).   Accordingly, Mr. Jeffries is entitled to a declaration clarifying this substantial dispute between the parties, which may avoid future litigation.

**III.    Award of Attorney Fees and Costs.**

This dispute can be broken down into three distinct phases: (i) the administrative review phase (June 1999 to October 3, 2001); (ii) the initial stage of litigation predating defendant's delinquent payment of benefits phase (October 3, 2001 to February 2002); and (iii) the litigation post delinquent benefit payment phase (February 2002 to the present).   The Magistrate Judge improperly denied Mr. Jeffries' request for an award of fees and costs incurred in each of these three independent phases.   Pursuant to 29 U.S.C. § 1132(g)(1) this Court should exercise its broad discretion and award attorneys' fees and costs incurred in each of these independent phases.

**A.    Legal Framework**

Section 502 of ERISA, 29 U.S.C. § 1132, provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).   The Sixth Circuit has determined that trial courts have "substantial discretion" to grant or deny a request for attorney fees in an ERISA action.[7]   The Sixth Circuit has adopted a five-prong test for

---

[7]    *Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 860 (6th Cir. 2000).

this Court to employ in rendering such an award. *Hoover v. Provident Life & Accident Insurance Company*, 290 F.3d 801 (6th Cir. 2002).[8] These are known as the "**King** Factors:"

1)     the degree of the opposing party's culpability or bad faith;

2)     the opposing party's ability to satisfy an award of attorney fees;

3)     the deterrent effect of an award on other persons under similar circumstances;

4)     whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and

5)     the relative merits of the parties' positions.

The **King** Factors are used flexibly. No single factor is necessary or dispositive.[9] In fact, one **King** Factor standing alone may provide sufficient support for an award.[10]

### B.     The King Factors And The Administrative Review Phase.

Mr. Jeffries' Claim and three appeals consumed 2 years 8 months and cost Mr. Jeffries a tremendous sum in attorney fees. At no point during that process did: (i) any of defendant's in-house, out-house, or "independent" physicians personally examine Mr. Jeffries; (ii) anyone representing the defendant ever speak to one of Mr. Jeffries' physicians; and (iii) *amazingly,* it

---

[8]     The only indications of Congress's intent in allowing fees pursuant to the ERISA statute are to "provide . . . participants and beneficiaries with broad remedies for preventing violations . . . ." S. Rep. No. 127, 93d Cong., 1st Sess. 35 (1973), 1974 U.S. Code Cong. & Admin. News 4639, 4871; and "to remove jurisdictional and procedural obstacles which in the past . . . have hampered . . . recovery of benefits due to participants" H.R. Rep. No. 533, 93rd Cong., 1st Sess. 17 (1973), 1974 U.S. Code Cong. & Admin. News 4639, 4655.

[9]     *Firestone Tire & Rubber Co. v. Neusser*, 810 F. 2d 550, 558 (6th Cir. 1987); and *Hoover v. Provident Life & Accident Insurance Company*, 290 F. 3d 801 (6th Cir. 2002).

[10]     *See, Administrative Committee Of The Sea Ray Employees' Stock Ownership And Profit Sharing Plan v. Robinson* 2000 U.S. Dist. LEXIS 22036 (E.D. Tn. 2000).

appears from the phone logs and SOAP notes for June 2000 to October 2001, that defendant made no effort whatsoever to perform any assessment of the materials Mr. Jeffries submitted for his 2nd and 3rd Appeals. (*See*, AR 00406-00410 and AR 00022–00025).

When assessing the propriety of awarding fees and costs incurred by Mr. Jeffries during the administrative review stage of the case, there can be no dispute that the first, second, and fifth King Factors are easily satisfied.[11] On the issue of bad faith:

- the defendant completely ignored the overwhelming and one-sided evidence of total disability apparent in the sworn testimony and reports of Mr. Jeffries' treating physicians and experts, which was confirmed by defendant's own IME;

- the defendant performed no review or analysis of Mr. Jeffries' Claim during the 2nd and 3rd review stages which consumed 16 months time (June 2000 to October 3, 2001);

- intentionally reviewed the Claim and Appeals under an incorrect definition of "totally disabled," despite Mr. Jeffries' numerous objections;

- the defendant unreasonably claimed a lack of, and a need for, the existence of "objective medical evidence" when such proof, although provided by Mr. Jeffries, is not required by ERISA or the Policy;

- the defendant repeatedly violated Mr. Jeffries' privacy by hiring one surveillance team after another for a total of <u>seven</u> multi-day investigations;

- the defendant improperly colluded with another insurer for the purpose of joining resources to deny Mr. Jeffries' Claim; and

---

[11]     Because of the procedural peculiarities of ERISA, a plaintiff may present essentially no new evidence in the trial court, there is no trial, and no testimony. The District Court essentially serves as an appellate court of review. Accordingly, a plan participant must sufficiently and adequately account for its burdens of proof and address any procedure or legal obstacles posed by ERISA during the administrative review stage. Without this proper planning, a claim with merit may be defeated. For that reason substantial time and legal skill are necessary to prosecute a ERISA benefits case during the administrative review stage. And given the complexities of ERISA and the high level of skill, expertise, and analysis it requires, a lay person must hire counsel to protect his/her rights.

- the defendant summarily denied the Claim without any analysis of the supporting information or even mention of Mr. Jeffries' cancer diagnosis, surgery and treatment.

The fifth *King* Factor is also conceded, given defendant's delinquent payment of benefits.

The Magistrate Judge improperly refused to exercise his broad discretion to, in light of Prudential's obvious bad faith conduct, award Mr. Jeffries the attorney fees and costs he incurred during the administrative review phase of the case, which as a practical matter is the stage of the dispute where all substantive actions took place.

The Magistrate Judge relied on *Anderson v. Procter & Gamble Co.,* 220 F.3d 449 (6th Cir. 2000) to incorrectly conclude that notwithstanding defendant's conduct, the Court could not exercise its substantial discretion to shift the burden of the attorney fees and expenses Mr. Jeffries incurred in the administrative review phase of this case to keep his claim alive.

*Anderson* is easily distinguished from the present case. As the *Andersen* Court highlighted in its decision, the plaintiff in that case "did not file a civil action for any of the reasons set forth in § 1132(a), but filed suit only to recover attorney fees for legal work performed during her administrative claims proceeding. Contrary to the Magistrate Judge's determination, there is no *per se* rule prohibiting this Court from exercising its "substantial discretion" under the extraordinary facts of this case to award Mr. Jeffries his legal fees incurred since June 1, 1999, the date that defendant first denied the Claim.

As the Supreme Court has noted in other subject areas, the fact that the attorney fees Mr. Jeffries incurred during the administrative review phase of the case were incurred prior to the date a complaint was filed in this Court does not diminish their importance to the ultimate

outcome.[12]   The policy considerations influencing the Supreme Court's decisions in *Sullivan* and *Pennsylvania* apply in equal measure in this action.   That is, when assessing the propriety of shifting the burden and expense of attorney fees, courts should consider the legitimate, relevant purposes for which fee-shifting has been permitted or proposed, including punishing bad faith litigants, providing the plaintiff with complete relief in appropriate cases, preventing unjust enrichment, or removing deterrents to meritorious litigation by reducing the disparity between the resources available to the parties.

In *Pennsylvania*, the Supreme Court determined that "participation in the administrative review process was crucial to the vindication of respondent's rights . . . and compensation for these activities was entirely proper and within the 'zone of discretion' afforded the District Court." (*Id. at 561*).   And the Supreme Court further determined that fees incurred in the administrative review process may be properly shifted if they are "useful and of a type ordinarily necessary to secure the final result obtained from the litigation."   (*Id. at 561*).

In *Sullivan*, the Court cited *Pennsylvania* for the proposition that fees incurred for an administrative review are recoverable where they are "intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees . . . [and] they should be considered part and parcel of the action for which fees may be awarded." (*Id. at 888* ).

In *Anderson*, the Sixth Circuit interpreted the Supreme Court's statement in *Sullivan* (that "administrative proceedings may be so intimately connected with judicial proceedings as

---

[12]      *See*, *Sullivan v. Hudson*, 490 U.S. 877, 892, 104 L.E d. 2d 941, 109 S. Ct. 2248 (1989) and *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986).

to be considered part of [a] civil action for purposes of a fee award") to mean that "fees for administrative proceedings under 29 U.S.C. § 1132(g) should be recoverable only when the final judgment (or enforcement thereof) in the prevailing party's suit depends on the administrative proceedings for which fees are being claimed." *Id. at 453-454.* Clearly, that is the case here.

The more recent decision of *Parke v. First Reliance Standard Life Insurance Company,*, 2002 U.S. Dist LEXIS 18762 (D. Minn. 2002)(attached as Exhibit 3) reviews Sixth Circuit and Ninth Circuit decisions regarding ERISA's fee-shifting statute as well as the U.S. Supreme Court decisions on fee-shifting statutes generally. In *Parke*, the Court concluded that "the fact that fees in this [ERISA] case were incurred prior to the start of judicial proceedings does not diminish their importance to the ultimate outcome" and the Court awarded the plaintiff the fees incurred in the administrative review process. *Id.*

During the June 1, 1999, to October 3, 2001, stage of the case, Mr. Jeffries incurred substantial legal expenses and given defendant's overall conduct and the satisfaction of the **King** Factors, this Court should exercise its discretion and shift the burden of those fees on to the defendant.

### C.    The King Factors And The Initial Litigation Phase

The shift of fees and costs for the initial 3 months of the litigation is appropriate. First, the suit was mandated by defendant's unconscionable refusal to recognize that the medical evidence and administrative record established beyond doubt that Mr. Jeffries was entitled to benefits.

As a result of defendant's bad faith actions, and its close of the Claim and Third Appeal, Mr. Jeffries was forced to pay a lawyer to bring suit. That lawyer incurred substantial expense

in preparing a complaint and initial discovery requests.  In response to each, the defendant continued to *in bad faith* deny that the Administrative Record conclusively entitled Mr. Jeffries to benefits.  In its Answer and Interrogatory Responses, the defendant affirmatively stated that Mr. Jeffries was not disabled.  This was bad faith that went uncorrected until February 2002.

The **King** factors are satisfied for this first phase of the litigation of this dispute and a shift of fees and costs is warranted for that phase.

**D.     The King Factors and the February 2002 To Present Stage Of The Litigation.**

The Magistrate Judge incorrectly refused to exercise the Court's broad discretion and award fees and costs for this final stage as well.  Contrary to the Magistrate Judge's assertion, the award of fees and costs to Mr. Jeffries will serve a deterrent effect and confer a common benefit.  Here, the defendant made decisions wholly unsupported by the Administrative Record.  Defendant also performed no assessment whatsoever of the evidence Mr. Jeffries submitted with his 2nd and 3rd Appeals.  A shift of the fees incurred in the Administrative review stage here will have the effect of deterring plan administrators from taking the same gamble that defendant obviously took (i.e., neglecting a Claim, despite overwhelming evidence, in hope that the disabled participant may not financially survive the multi-year administrative review process and, therefore, preventing the plan administrator from getting caught or challenged) with the cost of the gamble presently being limited to the amount of the benefits the plan adnministrator would have paid before they took the risk.[13]

---

[13]        *See, **Crosby v. Bowater Incorporated** 262 F. Supp. 2d 804 (W.D. Mi. 2003)("without this deterrent effect, plan trustees might [act improperly] in hopes of not being caught . . . the award also is important for the purpose of fairly compensating the [participant]. Without the award, the [plan

## Conclusion

For these reasons, the Magistrate's decision to sustain defendant's motion for summary judgment and deny plaintiff's competing motion on these issues should not be adopted and the Court should provide Mr. Jeffries with the requested relief.

Respectfully submitted,

Dated:   December 15 2003

/s Michael A. Roberts
Michael A. Roberts, Esq.
GRAYDON HEAD & RITCHEY LLP
511 Walnut Street, Suite 1900
Cincinnati, Ohio 45202
(513) 629-2799
(513) 651-3836 - fax
email:mroberts@graydon.com
*Trial Counsel For Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed to Edward T. Wahl, Esq., FAEGRE &BENSON LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402-3901 and Jim Cummings, Waite Schneider Bayless & Chesley, One West Fourth Street, Cincinnati, Ohio 45202, on this 15th day of December, 2003.

/s Michael A. Roberts

---

participant's] legitimate expectations of complete pension benefits (without the improper decrement) would be unnecessarily frustrated by the payment of the attorney fees themselves.")